THE HONORABLE KYMBERLY K. EVANSON

U.S. DISTRICT COURT FOR THE WESTERN
DISTRICT OF WASHINGTON (SEATTLE)

| | |
|---|---|
| Hat Nguyen,<br><br>                    Plaintiff,<br><br>        v.<br><br>Clear Recon Corp., a Washington State Corporation; Select Portfolio Servicing, Inc., a Utah Corporation;  U.S. Bank N.A., successor trustee to Bank of America, N.A., successor to LaSalle Bank, N.A., as trustee, on behalf of the holders of the Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-9; Jaspal Jazz Singh, An Individual; Eastside Funding, LLC, a Washington Limited Liability Company; and John and Jane Does 1-10,<br><br>                    Defendants. | Case No.: 2:25-cv-01823-KKE<br><br>SECOND AMENDED COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

## I.    INTRODUCTION

1.    This action seeks to set aside a nonjudicial foreclosure sale that was void ab initio because the purported trustee lacked the legal authority to conduct it. In the alternative, this action seeks to recover over $100,000 in surplus home equity that was wrongfully stripped from

1

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

Mr. Nguyen due to the actions of Defendants' Clear Recon, Select Portfolio, and U.S. Bank's unlawful and bad-faith conduct in violation of state and federal law.

2.    The foreclosure sale was void for at least two independent reasons. First, the purported trustee, Defendant Clear Recon Corp. ("CRC"), and the loan servicer, Defendant Select Portfolio Servicing, Inc. ("SPS"), engaged in a documented, bad-faith obstruction of Plaintiff Hat Nguyen's right to cure a default on her home loan. Despite Plaintiff tendering the full reinstatement amount via an irrevocable wire transfer minutes before the auction, Defendants proceeded with the sale.

3.    This bad-faith and negligent conduct was symptomatic of a deeper, structural conflict of interest: CRC, the supposedly neutral trustee, is a captive affiliate of Aldridge Pite, LLP, the law firm representing the beneficiary, U.S. Bank. The foreclosure documents were certified by Aldridge Pite's own employees acting under the guise of trustee officers, rendering CRC incapable of the impartiality and good faith required by Washington law. It's also an indication that Defendant CRC is not and was not in compliance with the requirements of a trustee in the Deed of Trust Act, RCW 61.24.010(1)(a).

4.    Acting without legal authority and in defiance of their duties, CRC proceeded with the void sale. The property was sold for $510,500, against a total debt of approximately $436,800. This wrongful sale not only deprived Plaintiff of her home but also of hundreds of thousands of dollars in home equity. Upon information and belief, Defendant SPS's own pre-sale valuation of the Property was $850,000, meaning the wrongful sale caused Plaintiff to suffer a loss of at least $339,500. Plaintiff now seeks a judicial declaration that the sale is void, an order quieting title to her property, and damages for Defendants' material violations of the Deed of Trust Act, the Consumer Protection Act, the Real Estate Settlement Procedures Act, and the Fair Debt Collection Practices Act.

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

## II.    PARTIES

5.    Plaintiff Hat Nguyen ("Plaintiff") is a person and consumer, and was, at all relevant times, the owner of the residential real property located at 30007 188th Ave SE, Kent, Washington 98042 (the "Property").

6.    Defendant Clear Recon Corp. ("CRC") is a Washington State corporation doing business in Washington as a foreclosure trustee. At all relevant times, CRC acted as the purported trustee under the Deed of Trust and conducted the void foreclosure sale at issue even though it wasn't in compliance with RCW 61.24.010(1)(a).

7.    Defendant Select Portfolio Servicing, Inc. ("SPS") is a Utah corporation doing business in Washington as a mortgage loan servicer. At all relevant times, SPS serviced the loan and acted as the agent for the Beneficiary.

8.    U.S. Bank N.A., successor trustee to Bank of America, N.A., successor to LaSalle Bank, N.A., as trustee, on behalf of the holders of the Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-9 (the "Beneficiary") is the owner of the debt secured by the Deed of Trust on the Property. At all relevant times, the Beneficiary acted by and through its authorized agents, including the loan servicer, Defendant SPS, and the purported foreclosure trustee, Defendant CRC. The Beneficiary is liable for the acts and omissions of its agents undertaken within the scope of their agency.

9.    Defendant Jaspal Jazz Singh is, upon information and belief, an individual and a professional real estate investor who was the purported high bidder at the void foreclosure sale.

10.    Defendant Eastside Funding, LLC ("Eastside Funding") is a Washington limited liability company operating as a hard money lender, which financed Mr. Singh's purchase and was named as a co-grantee on the Trustee's Deed for security purposes.

11.    Defendants John and Jane Does 1-10 are other, presently unknown individuals or entities who acted as agents for the named Defendants or are otherwise responsible for the violations of law and damages alleged herein.

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

### III.   JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the state law claims asserted herein, which arise under the laws of the State of Washington, including the Deed of Trust Act (RCW 61.24) and the Consumer Protection Act (RCW 19.86).

13.     This Court has subject matter jurisdiction over the federal claims asserted herein, which arise under the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), pursuant to 28 U.S.C. § 1331. The state law claims are so related to the federal claims that they form part of the same case or controversy, and this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in King County, Washington, pursuant to RCW 4.12.010, as the real property that is the subject of this action is situated in King County.

### IV.   FACTUAL ALLEGATIONS

**A.     The Loan, Property, and Defendants' Knowledge of Plaintiff's Rights and Equity**

15.     The Property, which is the subject of this action, is legally described as follows:

LOT 41, CASCADE FAIRWOODS DIVISION NO. 2, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 93 OF PLATS, PAGES 58 AND 59, IN KING COUNTY, WASHINGTON.

16.     On May 22, 2014, a Quit Claim Deed was recorded under King County Auditor's File No. 20140522001646, conveying the Property from "THE GRANTOR DUA TRAN" to "HAT T. NGUYEN, a married woman as her separate property." A true and correct copy of this deed is attached as **Exhibit A**. Plaintiff has therefore held sole recorded ownership interest in the Property since 2014.

17.     On or about August 9, 2005, Plaintiff's late husband, Duan Van Tran, obtained a loan from American Mortgage Network, Inc. in the original principal amount of $436,800,

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

evidenced by a Promissory Note ("Note") and secured by a Deed of Trust ("DOT") recorded against the Property. The Plaintiff signed the DOT but she was not a borrower on the Note.

18.     The Note and DOT were later assigned to Bank of America, National Association as Successr by Merger to LaSalle Bank National Association as Trustee for WMALT 2006-9 by Select Portfolio Servicing,its Attorney in Fact and then later assigned to the present Beneficiary, U.S. Bank N.A., successor trustee to Bank of America, N.A., successor to LaSalle Bank, N.A., as trustee, on behalf of the holders of the Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-9.

19.     Pursuant to RCW 61.24.005(2)(b), the definition of "Borrower" under the Deed of Trust Act explicitly includes a "successor in interest to the borrower or grantor, if known to the trustee or beneficiary."

20.     The loan servicer, SPS, was provided with notice of Duan Tran's death and had actual or constructive knowledge of Ms. Nguyen's status as the surviving title owner and successor in interest. As such, SPS had a non-delegable duty under RESPA and the DTA to afford her all the rights of a borrower.

21.     In the months preceding the foreclosure sale, Hat Nguyen's daughter and authorized agent, Julie Tran ("Ms. Tran"), engaged with Defendant SPS to find a workout alternative. In or around July 2025, Plaintiff submitted an online application for a loan modification.

22.     In a letter dated June 11, 2025, SPS denied the application. The stated reason for the denial was that a modification was "not in the financial interest of the investor" based on a Net Present Value (NPV) calculation, (a financial test used by mortgage servicers in workouts to compare the expected monetary return from a loan modification against the expected return from a foreclosure), telling Ms. Tran, that it was not in the investor's interest to provide a workout plan. The denial letter itself, however, contained a material admission: the NPV analysis was

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

based on an estimated Property Value of $850,000, confirming that SPS and the Beneficiary were aware of the substantial equity in the home.

23.    Following the denial, Ms. Tran attempted to communicate with the "Relationship Manager" assigned by SPS. On July 23, 2025, Ms. Tran sent an email to the assigned manager seeking to discuss options. No response was ever received. A true and correct copy of this unanswered email is attached as **Exhibit B**.

24.    On or about August 11, 2025, in a further act of misdirection by Defendant SPS, Ms. Tran contacted an unidentified male SPS representative to request a reinstatement quote. During this call, the SPS representative explicitly instructed Ms. Tran to cease communication with SPS and instead contact the beneficiary's foreclosure counsel, Aldridge Pite, LLP. The SPS representative specifically provided the name and telephone number for an attorney, Tammy Williams, misrepresenting to Ms. Tran that Ms. Williams was the attorney handling the sale and would be able to provide the exact reinstatement number required to reinstate the loan.

25.    Relying on the instructions from the SPS, Ms. Tran placed a telephone call to the number provided for Tammy Williams at Aldridge Pite, LLP, on the following day, August 12, 2025. When she was unable to reach Ms. Williams, Ms. Tran left a detailed voicemail message explaining the purpose of her call and urgently requesting the information needed to cure the default and prevent the impending foreclosure sale of her mother's home. That call, however, was never returned by Ms. Williams or any other representative from Aldridge Pite, LLP. This left Plaintiff with no viable channel to communicate about the reinstatement cure, as both the servicer's assigned manager and its foreclosure counsel were now unresponsive.

26.    Prior to the scheduled sale, Defendant SPS, acting on behalf of the Beneficiary, provided Plaintiff with a formal, written Reinstatement Quote dated August 11, 2025, establishing that the amount of $73,021.54 was required to cure the default. The quote stated that "Reinstatement Good To Date: August 14, 2025," one day before the scheduled sale, and it

6

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

expressly authorized payment via wire transfer. A true and correct copy of the Reinstatement Quote is attached hereto as **Exhibit C**.

27. Unbeknownst to Plaintiff, on or about that same day, August 11, 2025, SPS had also assessed new, substantial Foreclosure Costs of $1,244.10, Property Inspection Costs of $30,00, and Interest on Advance of $29.50 to the account. These fees were not reflected in the Reinstatement Quote provided to Plaintiff. This created a situation where Plaintiff could only learn the true, final amount required to cure on the morning of the sale by contacting the Defendants directly, yet it was not revealed in any contemporaneous communication to Plaintiff.

28. On the morning of the sale, Ms. Tran began her documented, good-faith efforts to tender the reinstatement funds. The events that followed demonstrate a clear, coordinated, and bad-faith effort by both SPS and CRC to obstruct the cure, with each Defendant pointing the finger at the other.

29. In a telephone call with CRC's foreclosure sales department ("FC Sales") just prior to 9:07 a.m., an unknown representative for the trustee instructed Ms. Tran that all contact must be through email and that to stop the auction, she must email proof of the reinstatement amount. The CRC representative specifically stated that any proof or helpful documents should be sent via email.

30. At 9:07 a.m. on August 15, 2025, acting on these direct instructions, Ms. Tran emailed CRC's foreclosure sales department at FCSales@clearreconcorp.com, and the attorneys for CRC, Aldridge Pite, LLP at fcsales@aldridgepite.com, identifying the loan by account number and stating unequivocally: "I have the funds to reinstate the home… Please stop the auction at 10 am today." To substantiate this and demonstrate her present ability to cure, as requested by an unidentified person at CRC, Ms. Tran attached a screenshot of Plaintiff's BECU bank account showing an available balance of $75,012.30. This amount was more than sufficient to cover the Reinstatement Quote and represented more than 99% of the total, undisclosed amount Defendants would later claim was due. This email placed Defendant CRC on direct,

7

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

actual, and documented notice that Plaintiff had both the intent and the immediate financial ability to cure the default. A true and correct copy of both emails with the attached screenshots is attached hereto as **Exhibit D**.

31.     The significance of this proof of funds cannot be overstated. The bank screenshot demonstrated that Plaintiff had funds sufficient to cover all but a de minimis, undisclosed shortfall of $325.87 of the actual amount Defendants would later claim was due. Crucially, this minor shortfall was never communicated to Ms. Tran. Had the Defendants simply communicated this trivial final balance, the Plaintiff would have been able to pay instantly.

32.     Instead of facilitating the cure of this tiny remaining balance, Defendants responded with a bad-faith run-around.

33.     At 9:10 a.m., CRC responded via email - FCSales@clearreconcorp.com - deflecting its responsibility as an impartial trustee and initiating the run-around, CRC instructed Ms. Tran to "Please reach out directly to SPS at Loss Mitigation hotline…"

34.     Ms. Tran diligently followed CRC's instructions and immediately contacted the SPS Loss Mitigation hotline at 1-888-818-6032. In a frustrating and circular exchange that lasted approximately thirty minutes, SPS representatives repeatedly placed Ms. Tran on hold, transferred her between departments, and ultimately stated that they could not do anything to stop the sale. Also, in direct contradiction to its role as the servicer responsible for providing such figures and contrary to the information on the reinstatement quote, the SPS representative refused to provide any information about additional amounts needed to reinstate the loan.

35.     After this fruitless exchange, Ms. Tran hung up and called SPS again. This time, she was transferred to a representative in the SPS Ombudsman department. The SPS Ombudsman representative gave Ms. Tran explicit instructions: wire the money, take a picture of the wire confirmation, and email the proof of the wire to the SPS Ombudsman department at ombudsman@spservicing.com.

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

36.     Having now received contradictory instructions from CRC and an explicit directive from the SPS Ombudsman to wire the funds, Ms. Tran documented this impossible, circular instruction in real time. At 9:46 a.m., while on the phone with the servicer, she emailed CRC at FCSales@clearreconcorp.com stating, "I am on the phone with them, and they are stating I need to contact you. Please advise."

37.     Four minutes later, at 9:50 a.m., she emailed CRC again at the same email address, documenting the culmination of SPS's misdirection: **"SPS states only you can stop the sale."**

38.     At 9:52 a.m., despite being on actual notice that Plaintiff had the funds available and was actively attempting to pay according to its own direct instructions and the instructions of the SPS Ombudsman, and with full knowledge of the conflicting instructions being given, CRC made a unilateral and bad-faith decision to reject the reinstatement. In a dispositive email from FCSales@clearreconcorp.com, CRC informed Ms. Tran: "Your request has been reviewed and we will be proceeding to sale."

39.     In the two minutes that followed, Ms. Tran sent two more pleading emails to CRC through the same email, at 9:53 a.m., stating, "Can I please reinstate it," and at 9:54 a.m., saying, "I have the full funds available." CRC did not respond.

**B.      Plaintiff's Conforming Pre-Sale Tender Extinguishes the Trustee's Power of Sale**

40.     Trapped by Defendants' obstruction, and following the direct and unambiguous instructions of the SPS Ombudsman, Plaintiff tendered the only amount she had been formally quoted. At 10:22 a.m. on August 15, 2025, Plaintiff initiated an irrevocable outgoing wire transfer from her BECU account to SPS for $73,021.54, the exact base amount identified in the Reinstatement Quote. This irrevocable tender of substantially conforming funds, made at the specific direction of the servicer's Ombudsman, constituted an effective cure of the default and

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

occurred two minutes prior to the foreclosure auction. A true and correct copy of the wire transfer confirmation is attached hereto as **Exhibit E**.

41.     At 10:24 a.m., Defendant CRC, acting without legal authority, proceeded with the purported trustee's auction of the Property.

42.     At 10:29 a.m., just minutes after the void sale, Ms. Tran sent an email to the SPS ombudsman stating, "This is to verify the wire was completed."

43.     At 10:29:51 a.m. on August 15, 2025, Ms. Tran received an automated email from the SPS Ombudsman department confirming receipt of her email verifying the wire transfer. This email confirms that SPS had actual, acknowledged notice of the perfected pre-sale cure within minutes of the void auction. A true and correct copy of this acknowledgment email is attached hereto as **Exhibit F**."

44.     Following the wire, Ms. Tran began calling the SPS Ombudsman department hourly for updates. In each call, she was told that SPS was "working on it" and that there was "no news yet." Finally, at approximately 3:30 p.m., a representative from the SPS Ombudsman department informed Ms. Tran that the home had been auctioned off.

45.     Upon information and belief, CRC's bad-faith conduct was a direct result of its structural refusal to act as a neutral party. CRC is a captive affiliate of the law firm Aldridge Pite, LLP whose employees, including those at CRC, were always working and acting for the benefit of its client, Defendant SPS

46.     The Notice of Trustee's Sale in this matter was executed by Monica Chavez as an "Authorized Signatory" for CRC. Upon information and belief, supported by publicly available job postings from Aldridge Pite, Ms. Chavez is an employee of Aldridge Pite, holding a title such as "Foreclosure Processor," who has been given a title at CRC in an effort to disguise which entity is actually purporting to operate as a foreclosure trustee in Washington under the Deed of Trust Act.

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

47.    This "foreclosure mill" structure, wherein the supposedly neutral trustee is operationally and managerially integrated with the beneficiary's own law firm, creates an irreconcilable conflict of interest that makes it structurally impossible for CRC to exercise the impartiality required by its duty of good faith. RCW 61.24.010(4).

48.    Following the 10:24 a.m. auction, CRC received direct and confirmed notice of the pre-sale cure but took no action to halt the finalization of the sale.

1.    At 10:49 a.m. on August 15, Ms. Tran informed CRC via email that "The money was wired." CRC never responded.

2.    At 1:35 p.m. the same day, SPS confirmed directly to CRC that it had received the reinstatement funds, but stated it intended to return them, thereby compounding its refusal to allow Ms. Nguyen to reinstate the loan, and ratifying the wrongful sale in violation of its duties under federal and state law.

3.    Despite possessing this knowledge, CRC did not rescind the sale. Instead, on August 21, 2025, six days after receiving confirmed notice of the cure, CRC executed the Trustee's Deed Upon Sale and delivered it to the third-party purchaser. This was done in spite of the fact that CRC, as the purported trustee, had the legal authority to unilaterally do so when it is consistent with its obligation of good faith to both parties under RCW 61.24.050(2).

4.    This Trustee's Deed Upon Sale was subsequently recorded the next day, on August 22, 2025.

49.    The Trustee's Deed Upon Sale, recorded under King County Auditor's File No. 20250822001147 and attached as **Exhibit G**, purports to convey title to Jaspal Singh and Eastside Funding.

50.    The stated consideration on the Trustee's Deed is $510,500.

51.    The sale of the Property for $510,500, against a total debt of approximately $406,611.60, generated a surplus of $103,888.40. Based on SPS's own valuation of $850,000,

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

conceded by SPS in the loan modification denial, the wrongful sale caused Plaintiff to suffer the loss of at least $339,500 in home equity (the $850,000 fair market value less the approximate total debt and the surplus funds).

52.     SPS's own business records confirm its receipt and subsequent bad-faith rejection of the tender. A mortgage statement dated August 15, 2025, the very day of the sale, contains a dispositive admission: it explicitly acknowledges receipt of $73,021.54 under a line item labeled "Funds Received Under Review," noting that the funds were "not accepted." Rather than accepting the funds, SPS rejected the cure, thus ratifying the foreclosure sale. A true and correct copy of the August 15, 2025, Mortgage Statement is attached hereto as **Exhibit H**.

53.     On or about August 21, 2025, SPS effectuated its rejection of the reinstatement by mailing a Cashier's Check to Plaintiff for the full amount of $73,021.54, with "Return of Funds" noted on the instrument.

54.     The efforts to notify Defendants of the wrongful sale and demand rescission continued in the days following the auction. On the evening of August 21, 2025, after consultation with an attorney for her mother, Ms. Tran sent a detailed email to Kimberly Hood of Aldridge Pite, LLP, counsel for the Beneficiary and the law firm operating the trustee, CRC.

55.     In the email to Ms. Hood, Ms. Tran detailed her attempts to reinstate on the morning of the sale, including her 9:07 a.m. emails providing proof of funds, to both FCSales@aldridgepite.com and FCSales@clearreconcorp.com, recounting how CRC and SPS refused to halt the sale despite receiving proof of funds, accusing CRC of violating their duty of good faith under the Deed of Trust Act, and questioning why the reinstatement wire had been reversed. Ms. Tran also explicitly demanded that CRC use its powers to rescind the sale and stay any issuance or delivery of the Trustee's Deed, warning that Plaintiff would file for bankruptcy if the sale were not rescinded. To obtain clarity, she also formally requested answers to four specific questions: (1) the exact time of the auction; (2) whether the trustee's deed had been

12

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM<br>1526 GILPIN AVENUE<br>WILMINGTON, DE 19806<br>TEL: (302) 449-9010

issued, and if so, when; (3) the date and time the deed was mailed; and (4) when the trustee became aware of the wired funds and why it had failed to rescind the sale.

56.     Having received no response to Ms. Tran's email from the previous night, and after a search of the King County public records confirmed that no Trustee's Deed had yet been recorded, Plaintiff's counsel, Christina L. Henry, formally intervened to prevent the finalization of the wrongful sale. At 2:52 pm on August 22, 2025, counsel contacted Ms. Hood by both telephone call and email, demanding an acknowledgment of the communications from Ms. Tran and reiterating the urgent need for CRC to rescind the sale before taking any further action.

57.     Despite being on direct notice of the grounds for rescission from both Ms. Tran and Plaintiff's counsel, CRC and its principals took affirmative steps to finalize the void sale.

58.     Two hours later, Ms. Hood responded to Plaintiff's counsel via email. In her response, Ms. Hood made a material misrepresentation of fact, stating that the reinstatement funds "appear to have been sent at 12:40 mountain time, which is after the sale occurred." This was directly contrary to the wire confirmation receipt, showing the funds were sent at 10:22 a.m. Pacific Time.[1] Ms. Hood further stated that the sale would not be rescinded and, acting solely for the benefit of her firm's client, Defendant SPS, and abdicating the trustee's duty of good faith and independent judgment to which CRC, the firm subsidiary, is required to adhere, instructed that any arguments for rescission be put on attorney letterhead so they could be "forwarded to the lender and trustee [to] review independently."

59.     In a subsequent email on August 26, 2025, Ms. Hood made a critical admission that contradicted her earlier claim and confirmed Defendants' knowledge. She admitted that at 1:35 pm, the day of the sale," SPS notified CRC of funds and that they were being returned." This admission confirms that both the servicer and the trustee had actual, acknowledged receipt

---

[1] Mountain time is one hour ahead of Pacific Standard Time.

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

of the reinstatement funds just hours after the auction, but nevertheless chose to ratify the void sale rather than rescind it.

## V.   CAUSES OF ACTION

### A.   FIRST CAUSE OF ACTION
### (Violations of the Consumer Protection Act, RCW 19.86)
### (Against Defendants CRC and SPS)

60.   Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

61.   Defendant U.S. Bank is the owner of the debt secured by the Deed of Trust on the Property. As the principal and beneficiary, it is liable for the acts of its agent, Defendants CRC and SPS, under the doctrine of respondeat superior. The duty to conduct a foreclosure in good faith and in compliance with the Deed of Trust Act is a non-delegable duty belonging to the beneficiary. A beneficiary cannot escape CPA liability by delegating its foreclosure functions to a third-party trustee and/or servicer who then violates the law. The acts and omissions of CRC and SPS alleged herein were undertaken for the Beneficiary's financial benefit and within the scope of their agency, and are therefore imputed to Defendant U.S. Bank.

62.   At all relevant times, the Beneficiary acted by and through its authorized agents, including the loan servicer, Defendant SPS, and the foreclosure trustee, Defendant CRC. The Beneficiary is liable for the acts and omissions of its agents undertaken within the scope of their agency, particularly as the duty of good faith under the Deed of Trust Act is a non-delegable duty of the beneficiary

63.   The Consumer Protection Act (CPA) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. To prevail on a CPA action, a plaintiff must prove "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Klem v.*

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

*Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

64.     Here, Defendants SPS and CRC engaged in unfair or deceptive acts or practices occurring in the course of their trade and commerce as foreclosure trustees and mortgage servicers. These acts satisfy the first two elements of the *Klem* test under two independent theories.

65.     Element 1, Unfair Act: Defendants CRC and SPS committed unfair acts by engaging in a coordinated, bad-faith obstruction of Plaintiff's right to reinstate her loan. These acts are unfair because they are oppressive, violate public policy as established in the Deed of Trust Act, and caused substantial, unavoidable injury to Plaintiff. This conduct included, but was not limited to:

a.  CRC engaged in an unfair practice by first instructing Ms. Tran to submit proof of funds via email as the specific procedure to stop the sale, and then, after receiving exactly what it requested, refusing to halt the sale and instead directing her into a fruitless exchange with SPS.

b.  SPS engaged in an unfair practice by providing a Reinstatement Quote with an expiration one day before the sale, and then secretly assessing over $1,200 in new fees, creating an inevitable and undisclosed shortfall that it later used to reject a substantial cure.

c.  Both SPS and CRC engaged in an unfair "run-around" on the morning of the sale. After receiving documentary proof of Plaintiff's ability to pay, which CRC had solicited, CRC directed her to SPS, and SPS, after its own Ombudsman department instructed her to wire the funds, directed her back to CRC. This created an impossible procedural loop designed to prevent Plaintiff from learning the final, trivial amount needed to save her home.

15

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

    d. Defendant CRC, the trustee, committed a *per se* unfair act under *Klem,* 176 Wn.2d at 791-92, by abdicating its duty to act as an impartial third party. Instead of facilitating the cure, it had directed Plaintiff to prove that CRC improperly deferred to the servicer and then decided at 9:52 a.m. to "proceed to sale" despite being on actual notice of the imminent tender. This abdication of its duty of good faith culminated in CRC conducting the sale at 10:24 a.m., two minutes after the pre-sale cure had extinguished its power of sale under RCW 61.24.090. The subsequent sale conducted by Defendant CRC was therefore an unfair act undertaken without legal authority.

    e. Defendant SPS committed a separate unfair act by refusing to honor the reinstatement. After its own Ombudsman instructed Ms. Tran to wire the reinstatement funds, SPS's decision to reject the funds and ratify a wrongful sale—rather than accept the funds and communicate the de minimis balance—was an oppressive and unfair act.

    f. Following the void sale, Defendants committed separate and distinct unfair acts to ratify it.

        i. CRC's Failure to Rescind: Defendant CRC breached its post-sale duty of good faith by failing to exercise its discretion to rescind the sale under RCW 61.24.050(2). Despite having confirmed notice of the pre-sale cure by 1:35 p.m., CRC abused its discretion by improperly deferring to the servicer's self-serving decision to return the funds rather than exercising its own independent judgment to correct the manifest error.

        ii. SPS's Rejection of Conforming Tender: Simultaneously, Defendant SPS committed a separate unfair act by refusing to honor the reinstatement. Upon notice of the tender, SPS took the affirmative step of rejecting and

16

SECOND AMENDED COMPLAINT

returning the $73,021.54 in funds, thereby wrongfully ratifying the sale for its own and the Beneficiary's financial benefit.

iii. <u>Sale for a Grossly Inadequate Price:</u> Furthermore, the combination of the trustee's documented breaches of its duties and the grossly inadequate sale price constitutes a separate unfair act. As held in *Cox v. Helenius*, 103 Wn.2d 383, 388, 693 P.2d 683 (1985), a trustee's biased actions combined with a grossly inadequate purchase price can render a sale void. Here, the Property, valued by SPS itself at $850,000, was sold for a mere $510,500. This result, achieved through Defendants' bad-faith conduct, is an unfair act that independently warrants relief.

66. Element 1, Deceptive Act: Separately, Defendant CRC committed a deceptive act when it held itself out to the public, including Plaintiff, as a neutral, independent trustee while it was, in fact, a captive affiliate of the beneficiary's law firm, Aldridge Pite, LLP. This structural conflict is a material misrepresentation by omission that has the capacity to deceive a substantial portion of the public regarding the trustee's impartiality.

67. Element 2: Occurring in Trade or Commerce. All of the aforementioned unfair and deceptive acts and practices were performed by Defendants CRC and SPS in the course of their business as a professional foreclosure trustee and mortgage loan servicer, respectively, and thus occurred entirely within trade or commerce.

68. Element 3: Defendants' actions have a clear public interest impact under the criteria established by the legislature in RCW 19.86.093(3). Defendants' acts demonstrate a high "capacity to injure other persons." RCW 19.86.093(3)(c). Defendants CRC and SPS are high-volume, institutional foreclosure and servicing actors. Their practices—including using a structurally conflicted "sham trustee" and systematically obstructing a homeowner's right to cure via a bad-faith "run-around"—are not unique to Plaintiff but are part of a business model with an inherent capacity for repetition against other vulnerable homeowners in Washington.

17

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

69.     Element 4: Injury to Business or Property. As a direct and proximate result of Defendants' acts, Plaintiff suffered a concrete and quantifiable injury to her property, namely the loss of her home and the loss of all of her home equity.

70.     Element 5: Causation. A direct causal link exists between Defendants' unfair and deceptive acts and Plaintiff's injury. But for Defendants' unfair obstruction of the reinstatement and their bad-faith decision to proceed with the sale, the sale would not have occurred. Further, the deceptive nature of the sham trustee structure was a proximate cause of the injury; because of its structural conflict, CRC abandoned its impartiality and acted as an agent for the beneficiary, single-mindedly focused on completing the sale, which directly led to the loss of Plaintiff's home.

71.     The measure of her actual damages is the value of her lost home equity, which, based on Defendant SPS's own pre-sale valuation, is an amount of at least $339,500.

72.     Pursuant to RCW 19.86.090, Plaintiff is entitled to recover her actual damages, an order enjoining Defendants' unlawful practices, her reasonable attorney's fees and costs, and, in the court's discretion, treble damages up to the statutory maximum.

73.     Defendants CRC and SPS breached their non-waivable duty of good faith to Plaintiff in at least two ways. First, they engaged in a coordinated effort to obstruct Plaintiff's right to cure the default. This bad-faith conduct included SPS and CRC directing Ms. Tran into a circular run-around just before the sale, and CRC's explicit, 9:52 a.m. email preemptively refusing to accommodate the known, pending cure. A trustee acting in good faith has an affirmative duty to facilitate, not frustrate, a borrower's attempt to reinstate their loan.

74.     Defendants engaged in unfair and deceptive acts or practices. These acts include: (a) the unfair practice of actively obstructing Plaintiff's right to reinstate her loan; and (b) the deceptive practice of CRC holding itself out as a neutral, independent trustee when it is, in fact, an affiliate of the beneficiary's law firm. This misrepresentation by omission has the capacity to deceive a substantial portion of the public.

18

SECOND AMENDED COMPLAINT

75.     Defendants' actions impact the public interest. A breach of the DTA is a violation of the public interest for the purposes of the CPA. *See Klem*, 176 Wn.2d at 804-05. Further, the use of a sham trustee and the coordinated obstruction of reinstatement rights are practices with the potential to harm other Washington homeowners, which meets the public impact prong. *See* RCW 19.86.093(3)(c).

76.     Plaintiffs also seek injunctive relief under the CPA. By bringing this action, Plaintiff acts as a "private attorney general" to enforce the CPA and seeks an injunction to prevent this harm from happening to others, consistent with the CPA's broad remedial purpose.

77.     As a direct and proximate result of these unfair and deceptive acts, Plaintiff suffered injury to her property. The measure of her actual damages is the value of her lost home equity, which, based on Defendant SPS's own pre-sale valuation, is an amount of at least $339,500. Under RCW 19.86.090, Plaintiff is entitled to recover her actual damages; to obtain an injunction to prevent further harm to the public; to recover her reasonable attorney's fees and costs; and, in the court's discretion, to an award of additional damages up to a maximum of $25,000.

**B.     SECOND CAUSE OF ACTION**
**(Declaratory Relief to Set Aside Void Trustee's Sale and Quiet Title RCW 7.24 and RCW 7.28)**
**(Against All Defendants)**

78.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

79.     An actual and justiciable controversy exists between Plaintiff and all Defendants concerning their respective rights and interests in the Property following the purported trustee's sale of August 15, 2025. This cause of action seeks a judicial declaration of those rights and an order quieting title in Plaintiff. Each Defendant is a necessary party to this claim for the following reasons:

19

SECOND AMENDED COMPLAINT                              DEVLIN LAW FIRM
                                                      1526 GILPIN AVENUE
                                                      WILMINGTON, DE 19806
                                                      TEL: (302) 449-9010

80.    Defendants Jaspal Jazz Singh and Eastside Funding are named because they are the purported grantees under the void Trustee's Deed Upon Sale. As the current record claimants asserting an ownership interest hostile to Plaintiff's, they are indispensable parties to an action to quiet title under CR 19.

81.    Defendant CRC is named because it was the purported trustee and grantor that executed and delivered the void Trustee's Deed Upon Sale. As the entity that conducted the sale without legal authority and created the cloud upon Plaintiff's title, it is a necessary party to the adjudication of the sale's validity.

82.    Defendants SPS and the "Beneficiary" are named because their actions are central to the controversy and their rights are directly implicated. SPS, as the agent for the Beneficiary, took the actions that rendered the sale void—namely, waiving the reinstatement deadline and then improperly rejecting the curative tender. The Beneficiary, as the principal on whose behalf CRC and SPS acted, is the holder of the security interest that would be reinstated upon the setting aside of the void sale. A complete judicial declaration of rights requires their presence.

83.    Because a justiciable controversy exists concerning competing claims to the legal and equitable title of the Property, a judicial declaration of rights pursuant to Washington's Uniform Declaratory Judgments Act, RCW Chapter 7.24, and an action to resolve such claims under Washington's quiet title statute, RCW Chapter 7.28, are necessary and appropriate to adjudicate the parties' respective interests.

84.    The foreclosure sale conducted on August 15, 2025, is a legal nullity because the trustee, Defendant CRC, lacked the fundamental, jurisdictional authority to conduct it. The power of sale is a condition precedent to a valid nonjudicial foreclosure, and its absence extinguishes any jurisdictional authority to conduct the sale. *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 568 (2012). The sale is void for at least two independent reasons.

    a.    At 10:22 a.m., on August 15, 2025, two minutes before the auction, Plaintiff tendered the the exact reinstatement amount authorized and directed by the

20

| SECOND AMENDED COMPLAINT | DEVLIN LAW FIRM |
|---|---|
| | 1526 GILPIN AVENUE |
| | WILMINGTON, DE 19806 |
| | TEL: (302) 449-9010 |

Beneficiary's own agent, the SPS Ombudsman. This explicit instruction, given after Defendants refused to provide an updated figure, established the amount necessary to cure as a matter of law and equity. Plaintiff's irrevocable wire transfer was therefore not merely a substantial tender, but a perfected and conforming cure that extinguished the default and terminated CRC's power of sale at 10:22 a.m.

b. Defendants are estopped from asserting that a default existed at the time of the sale. SPS's post-sale assertion of a trivial shortfall cannot retroactively invalidate the cure. As a matter of law, SPS and its principal, the Beneficiary, are equitably estopped from challenging the sufficiency of a tender they themselves, through their authorized agent, instructed Plaintiff to make.

c. Because no default existed at 10:24 a.m., CRC had no statutory authority to conduct the sale, and the purported auction was a void act.

d. Separately, the sale is void because Defendant CRC was structurally incapable of acting as a true trustee under the Deed of Trust Act. As alleged herein, CRC operates as a captive affiliate of the Beneficiary's law firm, Aldridge Pite, LLP, creating an irreconcilable conflict of interest. This structure makes it impossible for CRC to exercise the impartiality and good faith required of a trustee, which has a good faith duty to both parties. *Klem*, 176 Wn.2d at 790. This fundamental failure to meet the essential, non-waivable duties of a trustee is not a mere procedural irregularity but a jurisdictional defect that voids the sale.

85. The post-sale defenses of waiver and bona fide purchaser status are also inapplicable. The waiver provisions of RCW 61.24.127 apply to a borrower's right to challenge procedural errors that may render a sale *voidable*. That statute cannot, as a matter of law, operate to ratify a void transaction that was a legal nullity from its inception. Likewise, because a void

21

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

deed conveys no title, Defendants Singh and Eastside Funding cannot claim protection as bona fide purchasers under RCW 61.24.040(7), as their grantor (CRC) had no valid title to convey.

86.     The void Trustee's Deed Upon Sale is a legal nullity and passed no valid title to Defendants Singh and Eastside Funding. The statutory protections for bona fide purchasers under RCW 61.24.040(7) are inapplicable to Defendants Singh and Eastside Funding. This recorded but void instrument constitutes a cloud upon Plaintiff's title. Pursuant to RCW 7.28.010, Plaintiff, as the person having a valid subsisting interest in the Property and the right to possession thereof, is entitled to a judgment and order quieting title in her name and cancelling the void Trustee's Deed.

87.     In the alternative, should the Court find the sale not void ab inito, the sale is voidable and must be set aside by the Court in equity based on the trustee's multiple, material breaches of its non-delegable duty of good faith under RCW 61.24.010(4). These breaches, detailed in the factual allegations above, independently and collectively warrant equitable relief:

   a.  Defendant CRC committed an independent, post-sale breach of its duty of good faith by abusing its discretion under RCW 61.24.050(2) when it failed to rescind the sale despite having actual, confirmed knowledge of the pre-sale cure and instead improperly deferred to the servicer's self-serving decision to return the funds.

   b.  Furthermore, the sale is voidable due to the overwhelming circumstances of unfairness that tainted the entire foreclosure process. This unfair conduct by Defendants, which violates the public policy of the Deed of Trust Act, included but was not limited to: (i) the coordinated and bad-faith obstruction of Plaintiff's statutory right to cure; (ii) the circular "run-around" tactics designed to make reinstatement impossible; and (iii) the trustee's fundamental abdication of its impartiality by acting solely as an agent for the Beneficiary.

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

88.     Plaintiff is therefore entitled to a judicial declaration that the August 15, 2025, trustee's sale is void, or in the alternative, an order setting aside the sale as voidable, and that the resulting Trustee's Deed Upon Sale is of no legal force or effect, and that legal and equitable title to the Property remains vested in Plaintiff, subject only to the reinstated Deed of Trust, "together with costs of suit and such other and further relief as the Court deems just and proper."

**C.     THIRD CAUSE OF ACTION**
**(Violations of the Real Estate Settlement Procedures Act (RESPA))**
**(Against Defendant SPS)**

89.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

90.     The loan at issue is a "federally related mortgage loan" as defined by 12 U.S.C. § 2602(1). Specifically, upon information and belief, the loan was originated by American Mortgage Network, Inc., a federally regulated mortgage loan,  and therefore falls within the purview of the statute. Defendant SPS is a "servicer" as defined by 12 U.S.C. § 2605(i)(2), and is subject to the servicing requirements of Regulation X, 12 C.F.R. § 1024, *et seq*.

91.     SPS violated its duties under RESPA and Regulation X in at least two distinct ways: (1) by failing to maintain reasonable policies to identify and communicate with a successor in interest, and (2) by failing to properly respond to a notice of error that was confirmed and validated by its own Ombudsman department.

92.     The series of written and oral communications sent by Ms. Tran, on the morning of August 15, 2025, informing SPS of Plaintiff's intent and present ability to cure the default, culminated in a direct instruction from SPS's own Ombudsman department to wire the funds from the Reinstatement Quote. This exchange constituted a "notice of error" under 12 C.F.R. § 1024.35. The notice asserted a servicing error under 12 C.F.R. § 1024.35(b)(11), namely, that SPS was improperly proceeding with a foreclosure despite Plaintiff's present ability and attempt to cure.

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

93.     The failure to halt a sale to process a conforming tender that the servicer itself, through its Ombudsman, instructed the borrower to make is precisely the type of servicing error RESPA obligates a servicer to correct.

94.     SPS received this notice of error, both directly and through its agent CRC, prior to the 10:24 a.m. sale. Upon receiving such notice, and particularly upon its own Ombudsman directing the cure, SPS was obligated under 12 C.F.R. § 1024.35(e) to conduct a reasonable investigation and take corrective action.

95.     SPS violated this absolute duty. It failed to conduct a reasonable investigation and, most egregiously, failed to take the only legally sufficient corrective action available: instructing its agent, CRC, to immediately postpone or cancel the sale to allow the cure it had just authorized to be completed. Instead, it allowed the void sale to proceed in direct contravention of its obligations under federal law.

96.     After the wrongful auction occurred, the 10:29 a.m. email from Ms. Tran confirming the wire transfer constituted a second, separate notice of error under 12 C.F.R. § 1024.35, informing SPS that a wrongful foreclosure sale had occurred despite a pre-sale cure. Upon receiving this notice, SPS had an absolute duty to investigate and take corrective action.

97.     The only reasonable and legally sufficient corrective action available to SPS was to accept the tendered funds, which would have provided the trustee with the clear statutory authority to rescind the sale under RCW 61.24.050(2)(a)(iii).

98.     SPS violated its duty to correct the error under 12 C.F.R. § 1024.35(e). Instead of taking the corrective action of accepting the funds to facilitate a rescission, SPS took the affirmative step of rejecting the funds and mailing a Cashier's check back to the Plaintiff. This act was not a corrective measure; it was an act designed to ratify the wrongful sale and prevent the application of Washington's statutory rescission mechanism, thereby compounding the initial servicing error in direct violation of RESPA.

24

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

99.     SPS's refusal to comply with its obligations under 12 C.F.R. § 1024.35 constitutes a failure to comply with RESPA's servicing rules, in violation of 12 U.S.C. § 2605(k)(1)(C).

100.    SPS's ongoing failure to correct the error is further evidenced by its hourly communications with Ms. Tran, in which its Ombudsman department represented it was "working on it" while taking no action to undo the wrongful sale that its own servicing failures had caused.

101.    SPS's refusal to comply with its obligations under 12 C.F.R. § 1024.35 constitutes a failure to comply with RESPA's servicing rules, in violation of 12 U.S.C. § 2605(k)(1)(C).

102.    After its Ombudsman instructed Plaintiff to wire the reinstatement funds, SPS violated its duties under RESPA by failing to implement any procedure to communicate with its trustee and halt the sale to allow the authorized tender to be processed. It then wrongfully rejected the funds post-sale.

103.    Furthermore, the 10:29 a.m. email from Ms. Tran confirming the wire transfer constituted a second, separate notice of error… SPS's ongoing failure to correct the error is further evidenced by its hourly communications with Ms. Tran, in which its Ombudsman department represented it was "working on it" while taking no action to rescind the wrongful sale that its own servicing failures had caused. Instead of rescinding the sale upon confirmation of the pre-sale cure, SPS compounded its error by taking the affirmative step of rejecting the funds and mailing a Cashier's check back to the Plaintiff.

104.    This claim is predicated on SPS's refusal to perform a core servicing duty, the duty to properly process information related to a borrower's cure of a default to avoid a needless foreclosure. This claim is therefore distinct from the non-actionable claims for denial of a loan modification that the Ninth Circuit addressed in cases like *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012), and the unpublished disposition in *Calcut v. Paramount Residential Mortg. Grp., Inc.*, 2025 U.S. App. LEXIS 11317 (9th Cir. May 8, 2025). Unlike the plaintiffs in those cases, Plaintiff is not challenging a refusal by SPS to change the terms of her loan; rather,

25

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

she is challenging SPS's failure to properly service the existing loan by accepting a contractually authorized reinstatement.

105.    As a direct and proximate result of SPS's RESPA violations, Plaintiff has suffered actual damages. But for SPS's refusal to comply with its statutory obligations to timely investigate and correct the asserted error by halting the foreclosure, the August 15, 2025, sale would not have occurred. The reinstatement would have been completed, the debt would have been cured, and Plaintiff would not have suffered the loss of her home and approximately $339,500 in equity. These actual damages also include other ascertainable economic losses, as well as non-economic damages for severe emotional distress resulting from the loss of her home.

106.    SPS's serial failures on August 15, 2025, to resolve the same core servicing error, first by failing to halt the sale pre-foreclosure, and second by refusing to accept the funds post-foreclosure to facilitate a rescission, constitute a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605.

107.    This history, combined with SPS's dual failures to respond to the pre-sale and post-sale notices of error, demonstrates a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605. Thus, pursuant to 12 U.S.C. § 2605(f), Plaintiff is entitled to recover her actual damages, statutory damages for the pattern or practice of noncompliance, and her reasonable attorney's fees and costs.

**D.      FOURTH CAUSE OF ACTION**
**(Violations of the Fair Debt Collection Practices Act (FDCPA))**
**(Against Defendant CRC)**

108.    Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

109.    The Fair Debt Collection Practices Act (FDCPA) prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. Specifically, for this case, the statute forbids "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if… there is no present right

SECOND AMENDED COMPLAINT                           DEVLIN LAW FIRM
                                                  1526 GILPIN AVENUE
                                                  WILMINGTON, DE 19806
                                                  TEL: (302) 449-9010

to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). The actions of Defendant CRC, as alleged herein, satisfy each element of a claim under this provision.

110.    To establish a claim under this specific provision, a plaintiff must plead and prove the following elements:

    a.    Defendant is a "Debt Collector": For the limited purpose of § 1692f(6), a nonjudicial foreclosure trustee like CRC is considered a "debt collector." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 481(2019)(the FDCPA exempts entities engaged solely in security interest enforcement from its general prohibitions, but expressly retains liability for wrongful enforcement under 15 U.S.C. § 1692f(6)).

    b.    Defendant Took Nonjudicial Action to Effect Dispossession: The defendant must have taken an action, without judicial process, to take away the plaintiff's property (e.g., conducting a foreclosure sale).

    c.    Defendant Lacked a Present Right to Possession: At the time the action was taken, the defendant must have lacked the legal authority under the applicable state law to dispossess the plaintiff of the property.

111.    Element 1: Defendant CRC is a "Debt Collector" for the purpose of this claim. For the limited purpose of this of prohibiting the wrongful dispossession of property, CRC, a nonjudicial foreclosure trustee is a "debt collector." By conducting the nonjudicial foreclosure sale at issue, CRC falls within the FDCPA's purview for this claim.

112.    Element 2: CRC violated § 1692f(6)(A) by taking nonjudicial action to effect the dispossession of property when there was no present right to do so.

113.    CRC took nonjudicial action to dispossess Plaintiff of her property at a time when it and its principal, the Beneficiary, no longer had a present right to possession. This violation is established as follows:

27

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

a. The pre-sale cure extinguished the present right to possession. Under Washington's Deed of Trust Act, the right to possess property via foreclosure is predicated on an existing default and is extinguished the moment that default is cured. *See Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 567 (2012). At 10:22 a.m., Plaintiff's tendered the exact amount authorized by the Beneficiary's agent, the SPS Ombudsman. This instruction to wire the funds from the Reinstatement Quote, given in the context of Defendants' refusal to provide an updated total, established the amount necessary to cure as a matter of law and equity. Plaintiff's irrevocable wire transfer, therefore, constituted a perfected, legally effective cure that terminated the Beneficiary's "present right to possession" at 10:22 a.m.

b. SPS's post-hoc claim of a shortfall does not invalidate the cure**.** The August 15th mortgage statement, created after the wrongful sale, which suggests a trivial shortfall, does not retroactively invalidate a cure that was already perfected based on the direct instructions of SPS's own authorized agent, the SPS Ombudsman. As a matter of law, Defendants are estopped from denying the sufficiency of a tender they themselves directed Plaintiff to make.

c. CRC took nonjudicial action after its authority was extinguished. At 10:24 a.m., two minutes after its authority to proceed had been extinguished, CRC conducted the nonjudicial foreclosure sale of the Property. This auction was a "nonjudicial action to effect dispossession" taken at a time when there was no present right to do so. The subsequent execution and recording of the Trustee's Deed further effectuated this wrongful dispossession. This conduct is a direct violation of 15 U.S.C. § 1692f(6)(A).

114.    Element 4: Damages. As a direct and proximate result of CRC's violation of the FDCPA, Plaintiff suffered actual damages, including but not limited to the loss of her home and

28

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

all of her equity therein, in an amount of at least $339,500. Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to recover her actual damages, statutory damages, and her reasonable attorney's fees and costs incurred in bringing this action.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hat Nguyen respectfully prays for judgment against Defendants as follows:

A.    For a declaratory judgment that the Trustee's Sale conducted on August 15, 2025, was void ab initio, or in the alternative, an order setting aside the sale as voidable;

B.    For an order setting aside the Sale and cancelling the Trustee's Deed Upon Sale recorded as King County Auditor's File No. 20250822001147;

C.    For an order quieting title to the Property in Plaintiff's name, subject to the reinstated Deed of Trust;

D.    For judgment against Defendants CRC, SPS, and U.S. Bank for their violations of the Consumer Protection Act, and an award of actual damages representing Plaintiff's lost home equity in an amount to be proven at trial, but believed to be not less than $339,500, plus, an award of treble damages up to the statutory maximum and attorneys' fees and costs;

E.    For an award of actual monetary damages against Defendants CRC and SPS for their violations of the CPA in an amount to be proven at trial, plus attorney fees and costs;

F.    For judgment against Defendant SPS for its violations of RESPA, and an award of actual and statutory damages, attorney's fees, and costs;

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

**G.**     For judgment against Defendant CRC for its violations of the FDCPA, and an award of actual and statutory damages, attorney's fees, and costs;

**H.**     For judgment against Defendants CRC and SPS for their violations of the CPA, and an award of actual damages in an amount of at least $339,500; and, in the court's discretion, an award of treble damages up to the statutory maximum of $25,000, plus reasonable attorney's fees and costs;

**I.**     For a broad order pursuant to RCW 19.86.090 and the authority of *Hockley v. Hargitt*, 82 Wn.2d 337, 510 P.2d 1123 (1973), permanently enjoining Defendants CRC and SPS from continuing the unlawful practices described herein so that this harm does not happen to other Washington homeowners, including but not limited to an injunction prohibiting the use of structurally conflicted trustees and the obstruction of reinstatement rights; and

**J.**     For such other and further relief as the Court deems just and equitable.

Dated this 1st day of October, 2025.

DEVLIN LAW FIRM LLC

 *s/ Christina L. Henry*
Christina Henry, WSBA No. 31273
Attorney for Plaintiffs
6100 219th St SW
Ste 480, PMB 398
Mountlake Terrace, WA 98043-2222
Tel# 206-319-0077
*chenry@devlinlawfirm.com*

SECOND AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

# EXHIBIT A



**20140522001646**

JULIE TRAN    QCD
PAGE-001 OF 001    72.00
05/22/2014 14:57
KING COUNTY, WA

**E2669286**

05/22/2014 14:57
KING COUNTY, WA
TAX        $10.00
SALE       $0.00        PAGE-001 OF 001

**AFTER RECORDING RETURN TO:**
Hat T. Nguyen
30007 188th Avenue SE
Kent, WA 98042

| | |
|---|---|
| **Document Title** | Quit Claim Deed |
| **Reference Number(s) of Related Documents** | |
| **Grantor** | Dua Tran |
| **Grantees** | Hat T. Nguyen |
| **Assessor's Property Tax Parcel Account Number(s)** | 062106-9073 |

Quit Claim Deed

THE GRANTOR DUA TRAN, husband of Grantee, for and in consideration of establish a separate estate conveys and quit claims to HAT T. NGUYEN, a married woman as her separate estate the following described real estate, situated in the County of King, State of Washington, together with all after acquired title of the grantor therein:

THE NORTH 165 FEET OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 6, TOWNSHIP 21 NORTH, RANGE 6 EAST, W.M. IN KING COUNTY, WASHINGTON;
EXCEPT THE EAST 15 FEET THEREOF FOR ROAD.

Commonly known as:
30007 188th Avenue Southeast, Kent, WA 98042

**Assessor's Property Tax Parcel Account Number(s): 062106-9073**

Dated: December 30, 2013.

Dua Tran

STATE OF WASHINGTON    )
                       )  ss:
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that Dua Tran is the person who appeared before me, and said persons acknowledged that they signed the instrument and acknowledged it to be their free and voluntary act for the uses and purposes mentioned in the instrument.

DATED: December 30, 2013.

Print Name: Thao Vo
NOTARY PUBLIC in and for the State of
Washington, residing at Kent
My Appointment expires: 03-08-17



Unofficial Copy

# EXHIBIT B

4:41

< 4

**HT**  **Hoang Tran**                                    7/24/25
To: relationshipmanager@spservicing.com >

[REDACTED]

Sent from my iPhone

Begin forwarded message:

**From:** Hoang Tran <h0ang253@yahoo.com>
**Date:** July 23, 2025 at 4:12:49 PM PDT
**To:** relationshipmanager@spsservicing.com
**Subject:** [REDACTED]

Hello Brenda,

Can we do a workout plan to keep the home?
30007 188th Ave SE, Kent, WA 98042.
Can we pay a portion of what we owe and modify
or workout out a repayment plan?

Thank you,
Julie Hoang Tran
Dua Van Tran's daughter
Sent from my iPhone

# EXHIBIT C

 **SPS SELECT** *Portfolio* **SERVICING, inc.**

Sign up for paperless delivery
at www.spservicing.com

Paperless

August 11, 2025

 ESTATE OF DUA  TRAN
30007 188TH AVE SE
KENT, WA 98042--000

| | |
|---|---|
| Customer Name: | ESTATE OF DUA TRAN |
| Account Number: | ███████████ |
| Property Address: | 30007 188TH AVE SE |
| | KENT, WA 98042 |

Dear Customer(s):

You may cure the delinquency by paying the Total Reinstatement Amount, which has been calculated for you in the table below. The Total Reinstatement Amount expires at 5:00 pm Eastern Time on the Reinstatement Good to Date. After that date you must contact us for a new Reinstatement Quote.

Payment of the Total Reinstatement Amount must be made payable to "Select Portfolio Servicing, Inc." and remitted in the form of a Bank Wire, Western Union Quick Collect, a Cashier's check, a Certified check or other certified funds.

**Over Night Mailing Address**
Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr., Salt Lake City, UT 84119

**Western Union Quick Collect**
Payable To: Select Portfolio Servicing, Inc.
Code City- Oswald, Code State- UT

| Account Number: | ███████████ |
|---|---|
| **Reinstatement Quote** | |
| Reinstatement Good To Date: | August 14, 2025 |
| Amount of Past Due Payments: | $65,270.16 |
| Interest On Advances: | $367.48 |
| Unapplied Balance: | $-1,250.60 |
| Expenses Paid by Servicer (Loan Level Advances): | $8,634.50 |
| **Total Reinstatement Amount:** | **$73,021.54** |
| Next payment due date post reinstatement | 09/01/2025 |

Issuance of this Reinstatement Quote does not constitute an agreement by SPS to suspend pending or future legal action or payment of: taxes, insurance, legal fees, legal costs, collection related expenses or any other miscellaneous expense. The Total Reinstatement Amount is the amount due as of the date of this letter and reflects attorney fees and costs which have been incurred up to the date of this letter and including the Good to Date. If any event should occur that increases the Total Reinstatement Amount, SPS reserves the right to assess these amounts against your account. SPS may not require such increases to the Total Reinstatement Amount to be paid to reinstate the account. However, if they are not required to reinstate your account, they will be required to bring your account current. SPS reserves the right to collect these post reinstatement amounts at any point in the future.

If you are unable to pay the Total Reinstatement Amount on or before the "Good to Date" then you must contact SPS for an updated Reinstatement Quote prior to remitting your payment. **Figures quoted above are subject to final verification by the Note Holder. SPS reserves the right to either reject or apply funds received after the expiration of this Reinstatement Quote, and, if insufficient to fully reinstate, SPS may elect to apply the funds to your account.** It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account.

If you are experiencing financial hardship, there may be options available to assist you.  Please contact our Loan Resolution Department at 888-818-6032 to explore these options in further detail.  We look forward to speaking with you.

If you have any questions regarding this reinstatement quote please contact our office. Our toll-free number is 888-818-6032, and representatives are available Monday through Friday between the hours of 8 a.m. and 8 p.m., and Saturday from 8 a.m. to 3 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

 

## Certified Funds Remittance

Certified funds must be sent in the form of a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect.

### Wire Instructions

All wires must reference the customer's account number, customer name, and property street address. Without these references, application of the funds may be delayed. Use these wire instructions **only** for **mortgage payments, reinstatements, or payoffs**. Please email any special instructions to WireDetail@spservicing.com, or you can fax details or instructions to 801-270-7838.

| | |
|---|---|
| Account Name | Select Portfolio Servicing, Inc.<br>Wire Retaining |
| Account Number | ▆▆▆▆▆▆▆▆ |
| Bank: | JP Morgan Chase |
| Routing/ABA# | ▆▆▆▆▆▆ |
| SWIFT Code | ▆▆▆▆▆▆ for international wire use only) |
| Customer Account Number | ▆▆▆▆▆▆ |
| Customer Name(s): | ESTATE OF DUA TRAN |
| Property Street Address | KENT, WA 98042 |

### Overnight Mailing Address

Select Portfolio Servicing, Inc.
**Attn:** Remittance Processing

3217 S. Decker Lake Dr., Salt Lake City, UT 84119

Please write the SPS account number on all funds and correspondence.

### Western Union Quick Collect

To find the Western Union location nearest you, visit www.westernunion.com or call 800-325-6000.

Reference the account number and deliver to Code City: Oswald; Code State: UT.

# EXHIBIT D





# EXHIBIT E

**From:** Hoang Tran <h0ang253@yahoo.com>
**Date:** August 15, 2025 at 10:49:01 AM PDT
**To:** FC Sales <FCSales@clearreconcorp.com>
**Subject: Re: 30007 188th Ave se, Kent, wa 98042**

The money was wired.



Sent from my iPhone

On Aug 15, 2025, at 9:54 AM, Hoang Tran <h0ang253@yahoo.com> wrote:

I have the full funds available.

Julie Tran
Sent from my iPhone

On Aug 15, 2025, at 9:52 AM, FC Sales
<FCSales@clearreconcorp.com> wrote:

Your request has been reviewed and we will be proceeding to sale.

2

Thank you

---

**From:** Hoang Tran <h0ang253@yahoo.com>
**Sent:** Friday, August 15, 2025 9:51 AM
**To:** FC Sales <FCSales@clearreconcorp.com>
**Subject:** Re: 30007 188th Ave se, Kent, wa 98042

Sps states only you can stop the sale.

Julie Tran
Sent from my iPhone

> On Aug 15, 2025, at 9:46 AM, Hoang Tran <h0ang253@yahoo.com> wrote:
>
> I am on the phone with them and they are stating I need to contact you.
> Please advise.
>
> Thank you,
> Julie Tran
> Sent from my iPhone

>> On Aug 15, 2025, at 9:10 AM, FC Sales <FCSales@clearreconcorp.com> wrote:
>>
>> Please reach out directly to SPS at Loss Mitigation hotline 888 818 6032.
>>
>> Thank you
>>
>> ---
>>
>> **From:** Hoang Tran <h0ang253@yahoo.com>
>> **Sent:** Friday, August 15, 2025 9:07 AM
>> **To:** FC Sales <FCSales@clearreconcorp.com>
>> **Subject:** 30007 188th Ave se, Kent, wa 98042
>>
>> To whom it may concern,

3

I have the funds to reinstate the home, account number ████████ with SPS servicing.
Please stop the auction at 10 am today. I can have the funds to you immediately.

Thank you,
Julie Tran
Daughter of Dua Tran
206-817-0531
<image001.jpg>


<image002.jpg>

Sent from my iPhone


CONFIDENTIALITY NOTICE:
This e-mail message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.


CONFIDENTIALITY NOTICE: This e-mail message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

# EXHIBIT F

## Christina Henry

**From:**    Hoang Tran <h0ang253@yahoo.com>
**Sent:**    Thursday, August 21, 2025 6:10 PM
**To:**     Christina Henry
**Subject:**   Fwd: Acknowledgement of Email Receipt

Sent from my iPhone

Begin forwarded message:

> **From:** Mail Delivery System <donotreply@spservicing.com>
> **Date:** August 15, 2025 at 10:29:51 AM PDT
> **To:** h0ang253@yahoo.com
> **Subject: Acknowledgement of Email Receipt**
>
> *** DO NOT REPLY TO THIS EMAIL***
>
> The Consumer Ombudsman Department at Select Portfolio Servicing, Inc. (SPS) has received your email. If your email requires a response, SPS will review your request and will respond.
>
> If you are submitting documents, these will be forwarded to the appropriate department for processing.
>
> You can contact our Ombudsman Department at (866) 662-0035, option 3. Representatives are available Monday through Friday between the hours of 8:00 a.m. and 5:00 p.m., Mountain Time. You may also visit our website at www.spservicing.com for additional information.
>
> Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llámennos al número 800-831-0118 y seleccione/marque la opción 2.
>
> This is not an attempt to collect a debt but a response to your request for information.

# EXHIBIT G

WHEN RECORDED MAIL TO:
**Jaspal Jazz Singh and Eastside Funding, LLC for security
      purposes only**
**3927 Lake Washington Blvd, NE
Kirkland, WA  98033**

Trustee Sale # **119659-WA**
Title # **230609133**

_____    SPACE ABOVE THIS LINE FOR RECORDERS
                                                    USE

## Trustee's Deed

The GRANTOR, **CLEAR RECON CORP, A WASHINGTON CORPORATION**, as present Trustee under
that Deed of Trust, as hereinafter particularly described, in consideration of the premises and payment
recited below, hereby grants without covenant or warranty to:  **Jaspal Jazz Singh and Eastside Funding,
LLC for security purposes only**  , GRANTEE

**CLEAR RECON CORP, as Trustee/Grantor**

 **PORTION OF SE QTR SW QTR STR 06-21-06**

**APN: 062106-9073**

Foreclosed Debtor: Dua Tran

Unofficial Copy

Filed for Record at Request of

AND WHEN RECORDED TO:
Jaspal Jazz Singh and Eastside Funding, LLC
for security purposes only
3927 Lake Washington Blvd, NE
Kirkland, WA  98033

---

T.S. No.: **119659-WA**  TSG Order No.: **230609133**  APN: #: **062106-9073**    A SPACE ABOVE THIS LINE FOR RECORDER'S USE

## TRUSTEE'S DEED (cont.)

The GRANTOR, **CLEAR RECON CORP, A WASHINGTON CORPORATION,** as present Trustee under that Deed of Trust, as hereinafter particularly described, in consideration of the premises and payment recited below, hereby grants without covenant or warranty to: **Jaspal Jazz Singh and Eastside Funding, LLC for security purposes only** , GRANTEE, that real property, situated in the County of King, State of Washington, described as follows:

THE NORTH 165 FEET OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 6, TOWNSHIP 21 NORTH, RANGE 6 EAST, W.M., IN KING COUNTY, WASHINGTON; EXCEPT THE EAST 15 FEET THEREOF FOR ROAD. NOW MORE COMMONLY KNOWN AS: LOTS 'A' AND 'B' KING COUNTY EXEMPT SEGREGATION NO. EMSC9-0005 BEING A PORTION OF THE NORTH 165 FEET OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 6, TOWNSHIP 21 NORTH, RANGE 6 EAST, W.M. IN KING COUNTY WASHINGTON. EXCEPTING THEREFROM THAT PORTION OF SAID LAND, AS SHOWN IN LIS PENDENS RECORDED, 05/11/2020 INSTRUMENT NUMBER 202005110028088, STIPULATED JUDGMENT AND DECREE OF APPROPRIATION, RECORDED 10/16/2020 INSTRUMENT NUMBER 20201016002046, AND PARTIAL RECONVEYANCE, RECORDED 01/05/2023 INSTRUMENT NUMBER 20230105000203, OF OFFICIAL RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:
LOT 'A' KING COUNTY EXEMPT SEGREGATION NO. EMSC9-0005 BEING A PORTION OF THE NORTH 165 FEET OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 6, TOWNSHIP 21 NORTH, RANGE 6 EAST, W.M. IN KING COUNTY WASHINGTON. EXCEPT THE EAST 15 FEET THEREOF FOR ROAD NOW MORE ACCURATELY DESCRIBED AS FOLLOWS: LOT 'B' KING COUNTY EXEMPT SEGREGATION NO. EMSC9-0005 BEING A PORTION OF THE NORTH 165 FEET OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 6, TOWNSHIP 21 NORTH, RANGE 6 EAST, W.M. IN KING COUNTY WASHINGTON EXCEPT THE EAST 15 FEET THEREOF FOR ROAD NOTE FOR INFORMATIONAL PURPOSES ONLY: THE FOLLOWING MAY BE USED AS AN ABBREVIATED LEGAL DESCRIPTION ON THE DOCUMENTS TO BE RECORDED, PER AMENDED RCW 65.04. SAID ABBREVIATED LEGAL DESCRIPTION IS NOT A SUBSTITUTE FOR A COMPLETE LEGAL DESCRIPTION WITHIN THE BODY OF THE DOCUMENT. PORTION OF SE QTR SW QTR STR 06-21-06

A.P.N. No.: **062106-9073**

T.S. No.: **119659-WA**
SPS

CRC TDUS 04172014

RECITALS:

1. This conveyance is made pursuant to the powers, including the power of sale, conferred upon said Trustee by that certain Deed of Trust between DUA TRAN, A MARRIED MAN, as Grantor, to FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS, as Beneficiary, dated 8/9/2005, recorded 8/11/2005, as Instrument No. 20050811002041 and a Partial Reconveyance was recorded on 01/05/2023 as Instrument No. 20230105000203 records of King County, Washington.

2. Said Deed of Trust was executed to secure, together with other undertakings, the payment of one promissory note in the sum of $436,800.00 with interest thereon, according to the terms thereof, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS and to secure any other sums of money which might become due and payable under the terms of said Deed of Trust.

3. The described Deed of Trust provides that the real property conveyed therein is not used principally for agricultural or farming purposes.

4. Default having occurred in the obligations secured and/or covenants of the Grantor, as set forth in Notice of Trustee's Sale described below, which by the terms of the Deed of Trust make operative the power to sell, the thirty-day advance Notice of Default was transmitted to the Grantor, or his successor in interest, and a copy of said Notice was posted or served in accordance with law.

5. U.S. BANK N.A., SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., SUCCESSOR TO LASALLE BANK, N.A., AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES, WMALT SERIES 2005-9, being then the holder of the indebtedness secured by said Deed of Trust delivered to said Trustee a written request directing said Trustee or his authorized agent to sell the described property in accordance with law and the terms of said Deed of Trust.

6. The defaults specified in the "Notice of Default" not having been cured, the Trustee, in compliance with the terms of said Deed of Trust, executed and recorded on 4/4/2025, in the office of the Auditor of **King** County, Washington, a "Notice of Trustee's Sale" of said property as Auditor's File No. **20250404000578**

T.S. No.: **119659-WA**
SPS

CRC TDUS 04172014

7. The Trustee, in its aforesaid "Notice of Trustee's Sale," fixed the place of sale as, OUTSIDE THE 4TH AVENUE ENTRANCE ADMINISTRATION BUILDING LOCATED ONE BLOCK EAST OF THE KING COUNTY COURTHOUSE LOCATED AT 500 4TH AVENUE, SEATTLE, WA 98104, a public place, on 8/15/2025 at 10:00 AM, and in accordance with law caused copies of the statutory "Notice of Trustee's Sale" to be transmitted by mail to all persons entitled thereto and either posted or served prior to 90 days before the sale; further, the Trustee caused a copy of said "Notice of Trustee's Sale" to be published once between the thirty-fifth and twenty-eighth day before the date of sale, and once between the fourteenth and seventh day before the date of sale in a legal newspaper in each county in which the property or any part thereof is situated: and further, included in this Notice, which was transmitted to or served upon the Grantor or his successor in interest, a "Notice of Foreclosure" in substantially the statutory form.

8. During foreclosure no action was pending on an obligation secured by said Deed of Trust.

9. All legal requirements and all provisions of said Deed of Trust have been complied with, as to acts to be performed and notices to be given, as provided in Chapter 61.24 RCW.

10. The defaults specified in the "Notice of Trustee's Sale" not having been cured eleven days prior to the date of Trustee's Sale and said obligation secured by said Deed of Trust remaining unpaid, on **8/15/2025**, the date of sale, which was not less than 190 days from the date of default in the obligation secured, the Trustee then and there sold at public auction to said Grantee, the highest bidder therefore, the property hereinabove described, for the sum of **$510,500.00,** by the satisfaction in full of the obligation then secured by said Deed of Trust, together with all fees, costs and expenses as provided by statute.

Date:    AUG 21 2025

CLEAR RECON CORP, A WASHINGTON CORPORATION

Monica Chavez
Authorized Signor

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA) ss.
County of SAN DIEGO)

On ___AUG 21 2025___, before me, ___Jennifer De La Merced___, a Notary Public in and for said County, personally appeared, ___Monica Chavez___ who or proved to me on the basis of satisfactory evidence to the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

SIGNATURE

T.S. No.: **119659-WA**
SPS

JENNIFER DE LA MERCED
Notary Public - California
San Diego County
Commission # 2479698
My Comm. Expires Jan 16, 2018

CRC TDUS 04172014

# EXHIBIT H

# SPS
**SELECT Portfolio SERVICING, inc**
P.O. Box 65250
Salt Lake City, UT 84165-0250
**www.spservicing.com**

Sign up for paperless delivery at www.spservicing.com

 Paperless

**Mortgage Statement**
Statement Date: 08/15/2025
Page 1 of 3

Customer Service: (800) 258-8602
Monday - Friday     8:00AM - 8:00PM ET
Saturday          8:00AM - 3:00PM ET

*For other important information, see reverse side*

+ 0002185887 0113644 1285887250318340 NY NN NN

ESTATE OF DUA VAN TRAN          113644
30007 188TH AVE SE
KENT, WA 98042-

| | |
|---|---|
| Account Number | 0022465587 |
| Property Address | 30007 188TH AVE SE KENT WA 98042 |
| Loan Due Date | 06/01/2023 [4] |
| Payment Due Date | 09/01/2025 |
| **Amount Due** | **$75,338.17** |

## Account Information

| | |
|---|---|
| Interest Bearing Principal | $250,211.60 |
| Deferred Principal | $159,400.00 |
| Outstanding Principal [1] | $409,611.60 |
| Interest Rate (Until Aug. 2035) | 4.625% [6] |
| Prepayment Penalty | No |

## Explanation of Amount Due [7]

**This account has been accelerated, which means all outstanding amounts are due. The accelerated amount as of 08/15/2025 is $470,382.21 [1].**

As of 08/15/2025, SPS will accept the amount below to reinstate this account.

| | |
|---|---|
| Current Payment Due | $2,257.13 |
| Unpaid Late Charges | $0.00 |
| Other Charges and Fees | $9,061.48 |
| Past Due Payment(s) | $65,270.16 |
| Unapplied Payment(s) [3] | $1,250.60 |
| **Amount to Reinstate Account** | **$75,338.17** |

## Funds Received Under Review

**Total Amount**     $73,021.54
*Funds that SPS has received but not accepted. Please contact SPS for any additional information.*

## Transaction Activity (07/16/2025 to 08/15/2025)

| Date | Description | Principal Balance | Interest | Taxes & Insurance | Late Charges | Unapplied Balance | Other Fees | Expenses Pd by Servicer | Total [1] |
|---|---|---|---|---|---|---|---|---|---|
| 07/16 | BEG BALANCE | $409,611.60 | $25,420.25 | $27,117.87 | $0.00 | ($1,250.60) | $367.48 | $7,390.40 | $468,657.00 |
| 08/08 | FC COSTS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,244.10 | 1,244.10 |
| 08/11 | PROP INSPECTION | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | 30.00 |
| 08/11 | INTEREST ON ADV | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 29.50 | 0.00 | 29.50 |
| 08/15 | ENDING BALANCE | $409,611.60 | $25,420.25 | $27,117.87 | $0.00 | ($1,250.60) | $396.98 | $8,664.50 | $469,960.60 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year To Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | |
| **Total** | **$0.00** | **$0.00** |
| Total Unapplied Balance | $1,250.60 [3] | |

## Important Messages

All communication sent to you by SPS is always available on our website: www.spservicing.com. For faster access to written communication and documents, please log in to your customer account on our website to view.

[1] This amount is not a payoff quote. If you would like a payoff quote, please see instructions on reverse side.

[7] Any transactions that occurred on the Statement Date noted above will not be reflected in the amounts listed in the section below.

[3] Partial payments or overpayments are treated as unapplied funds until we receive enough for a full principal and interest payment at which time we will credit your account for the principal and interest payment. There may be other options available to you depending on the account's status. If you are interested in learning about other options that might be available to have these funds applied to the account, please contact us at (800) 258-8602.

## **Delinquency Notice **

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure -- the loss of your home.

**As of August 15, 2025, you are 806 days delinquent on your mortgage loan.**
* Payment due 08/2025:  Unpaid payment of $2,257.13.
* Payment due 07/2025:  Unpaid payment of $2,257.13.
* Payment due 06/2025:  Unpaid payment of $2,257.13.
* Payment due 05/2025:  Unpaid payment of $2,257.13.
* Payment due 04/2025:  Unpaid payment of $2,257.13.
* Payment due 03/2025:  Unpaid payment of $2,257.13.

**Total: $75,338.17 due. You must pay this amount to bring your loan current.**

**SPS has completed the first notice or filing required to start a foreclosure.**

**If You Are Experiencing Financial Difficulty:** See the back for information about mortgage counseling or assistance. Also, there are a number of options available to assist customers who are experiencing difficulty with their payments. Please contact us immediately to discuss these options, arrange a reinstatement or address any questions regarding the statement at (888) 818-6032.

---

*Please detach bottom portion and return with your payment. Allow 7 - 10 days for postal delivery. Please do not send cash.*

## MONTHLY PAYMENT COUPON

### Amount Due

| | |
|---|---|
| Borrower Name(s) | ESTATE OF DUA VAN TRAN |
| Account Number | 0022465587 |
| Due By 09/01/2025: | $75,338.17 |

SELECT PORTFOLIO SERVICING, INC.
PO BOX 65450
SALT LAKE CITY UT  84165-0450

**Make checks payable to: Select Portfolio Servicing**

| | | |
|---|---|---|
| Monthly Payment | $ | . |
| Additional Principal | $ | . |
| Additional Escrow | $ | . |
| Late Fees | $ | . |
| Other (Please Specify) | $ | . |
| | | |
| **Total Amount Enclosed  $** | | . |

Change of address or telephone? If so, check here and note changes on back

2771  0022465587  0000225713  000023226  2

**IMPORTANT INFORMATION**

**Important Mailing Addresses** (Please include your account number on all correspondence)

| Regular Payments | Overnight/Express Payments | Notice of Error or Information Request or Qualified Written Request | General Correspondence | Check by Phone | Bankruptcy Correspondence & Notices must be sent to: |
|---|---|---|---|---|---|
| Select Portfolio Servicing, Inc. Attn: Remittance Processing P.O. Box 65450 Salt Lake City, UT 84165 | Select Portfolio Servicing, Inc Attn: Cashiering Dept. 3217 S. Decker Lake Dr. Salt Lake City, UT 84119 | Select Portfolio Servicing, Inc. P.O. Box 65277 Salt Lake City, UT 84165 Fax: (801) 270-7856 | Select Portfolio Servicing, Inc. P.O. Box 65250 Salt Lake City, UT 84165 | (800) 258-8602 Option 1 | Select Portfolio Servicing, Inc. Attn: Bankruptcy Dept. P.O. Box 65250 Salt Lake City, UT 84165 |

**PAYMENT INSTRUCTIONS** Paying your mortgage on time is an important obligation, so please pay on or before the payment due date. Payments are not considered paid until received and posted to your account. Please include the late charge in any payment made after the late payment due date noted on your statement. Postal delays do not result in a waiver of late charges, so please allow adequate time for mail service. If you don't pay on or before 3 p.m. MT on the payment due date, your loan will be considered delinquent. (NOTE: If you are currently sending all or part of your payment to the bankruptcy trustee, please disregard the Select Portfolio Servicing, Inc. payment address for that portion you are sending to the trustee.) We do not accept payments in cash.

**APPLICATION OF PAYMENTS** If you are current in making your payments, we will apply payments according to your Note. If you are delinquent, we apply payments to the oldest outstanding payments that are due under your Note.

**LOAN REPRESENTATIVES** If you would like to speak to someone about making a payment or payment arrangements, please call one of our loan representatives at (800) 258-8602 (Monday - Friday, 8 a.m. - 8 p.m. ET; Saturday, 8 a.m. - 3 p.m. ET).

**AUTOMATED CONVERSION OF YOUR CHECKS TO ACH DEBIT ENTRIES AND RETURNED CHECKS OR DEBITS** When you provide us a check, you authorize us to use the information from your check to make a one time Electronic Funds Transfer from your bank account. When we use your check to make an Electronic Funds Transfer, funds may be withdrawn from your account quickly, as soon as the day we receive your check. You will not receive your check back from your financial institution. If there are insufficient funds in your account we will reverse the amount of any such returned payment that we had credited to your mortgage. You authorize us to charge you a fee of up to twenty-five dollars ($25.00) as allowable by state law.

**CREDIT REPORTING** SPS furnishes information to consumer reporting agencies. You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your Note and Mortgage. If you believe such information is inaccurate, you may call Customer Service at (800) 258-8602, submit a written Notice of Error to the P.O. Box listed above, or submit a dispute with the consumer reporting agency.

**NOTICE OF ERROR OR INFORMATION REQUEST OR QUALIFIED WRITTEN REQUEST** If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent to the address listed above in the important mailing addresses section, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal Law.

**HOUSING COUNSELOR INFORMATION** If you would like counseling or assistance, you can contact the following: U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

**SPECIAL REQUEST AND ADDITIONAL FEES**

| Payment by Phone with a Live Agent | Up to $15.00 |
|---|---|
| Payment via Website, Mobile App, or Automated Phone System | Up to $5.00 |
| Returned Check Fee | Up to $25.00 |
| Express Mail Fee | Actual Charge Incurred |

*This fee schedule does not contain all fees that may be charged for services rendered. The actual fee charged to a particular customer may be different based upon certain requirements under state law, agency guidelines (e.g., FHA, VA) or other relevant criteria.*

**LOAN PAYOFFS** Payoff information may be requested verbally by calling the Customer Service toll free number printed on this statement, by faxing your requests to (801) 269-4269 or by mailing your request to: P.O. Box 65250, Salt Lake City, UT 84165-0250. If you do not receive your payoff quote within 5 business days of placing your request, please call our Customer Service Department.

**HOME OWNER INSURANCE** You are required to maintain Homeowners Insurance (and if required, Flood Insurance), at all times during the term of your Mortgage and provide or ask your insurance agent each year to provide us copies of all renewal policies and invoices to the address shown below at least (30) days before the date your existing policy expires. It is important for you to remember that if we do not receive a copy of your renewal or replacement policy, SPS may obtain coverage to protect its interest in the property. The coverage provided for this insurance may be different and more expensive than your expired coverage. We will only do this after we have notified you of your failure to maintain coverage. It is possible we may obtain certain benefits from this insurance placement coverage.

To ensure that SPS is properly notified of any changes with your insurance policy, we need the information below to be added to the Standard Mortgagee Clause on your insurance policy.

Select Portfolio Servicing, Inc.
ITS SUCCESSORS AND OR ASSIGNS
P.O. Box 7277 Springfield, OH 45501-7277

**All insurance information (including your account number) should be mailed or faxed to:**
**Insurance Service Center:** PO Box 7277, Springfield, OH 45501 Fax (866) 801-8177.

**REAL ESTATE TAX** If you have established an escrow account with us for taxes, you should keep copies of any tax bills you receive for your personal records. We have engaged a Tax Service to receive your tax bills, and we will pay taxes out of your escrow account to the extent there are sufficient balances in your escrow account. If you receive any special assessment bills, you should send them to our Tax Service Center address shown below. Special bills include:
- An area defined as a "Homeowner Area" where your local tax office will not send us the tax bill
- Any special assessments on your property in addition to your regular Real-Estate tax bills
- Any adjustments to your tax bills

**Tax Service Center:** PO Box 3541, Covina, CA 91722

**SPS CONSUMER OMBUDSMAN SERVICES** If you have an unresolved issue with SPS, and you have exhausted other customer service options, please contact our Consumer Ombudsman Department at (866) 662-0035 or through other methods found on www.spservicing.com.

| **COMMON ABBREVIATIONS** | |
|---|---|
| INT | Interest |
| FC or F/C | Foreclosure |
| BK | Bankruptcy |
| BPO | Broker Price Opinion |
| MISC DISB | Disbursement from escrow account for other than escrow item (E.g.:Analysis Refund, Payoff Refund) |

*This common abbreviations table does not contain all abbreviations that may appear in the "Activity this Period" section. For more information please refer to the Fee Schedule and Description document located at www.spservicing.com.*

HAS YOUR ADDRESS CHANGED? IF SO, PLEASE COMPLETE THIS FORM

Mailing Address _____

City _____ State _____ Zip _____

Home Phone _____ Business Phone _____
**All Borrower's Signature Required For Address Change**

_____          _____
Borrower's Signature                              Co-Borrower's Signature

**SPS** *SELECT* P.O. Box 65250 *Portfolio* Salt Lake City, UT 84165-0250 SERVICING, *inc* **www.spsservicing.com**

**Mortgage Statement**
Statement Date:08/15/2025
Page  3 of 3

Customer Service : (800) 258-8602
Monday - Friday    8:00AM - 8:00PM ET
Saturday    8:00AM - 3:00PM ET

Account Number  0022465587

| Important Messages |
| --- |

Any transactions that occurred after the statement date noted above will be reflected on your next statement.

This is an attempt to collect a debt. All information obtained will be used for that purpose.

We have paid Taxes and/ or Insurance on your behalf and you are responsible to reimburse us for these amounts plus interest which may be billed at the note rate.

If there is a balance under Expenses Paid by Servicer, it means we have paid certain expenses on your behalf due to the delinquent status of your account. You are responsible to reimburse us for these amounts plus interest, which may be billed at the note rate.

Due to the delinquent status of your loan a property inspection and/or valuation report was ordered and you are responsible to reimburse us for the amounts plus interest, which may be billed at the note rate.

The Outstanding Principal balance includes the Interest Bearing Principal balance and the Deferred Principal balance. The Deferred Principal balance is not subject to the charged interest rate and will be due as a final balloon payment on the earlier of (a) payoff of the Interest Bearing Principal balance, or (b) maturity date of the mortgage loan.

Under the Servicemembers Civil Relief Act if you or a family member has been deployed to active duty, you may be eligible for certain protections regarding your mortgage loan. Please contact us at (800) 258-8602 to discuss these protections.

[4] Loan Due Date: If this date is different from your Payment Due Date, it means that you are past due and owe payments from previous months.

[6] This reflects your note rate of interest. If foreclosure judgment has been entered on your account, a different rate of interest may apply. If you would like to pay off your account, the applicable rate(s) of interest will be used to calculate the payoff balance.

113644