UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAT NGUYEN,<br><br>     Plaintiff(s),<br><br> v.<br><br>CLEAR RECON CORP., et al.,<br><br>     Defendant(s). | CASE NO. C25-1823-KKE<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

Plaintiff Hat Nguyen ("Nguyen") owned real property in Kent, Washington ("Property") that was foreclosed upon after Nguyen defaulted on the loan. After failing to timely cure the default, the Property was sold at a trustee's sale on August 15, 2025. Dkt. No. 43 ¶¶ 79, 84. Nguyen now moves for a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65 to enjoin Defendants Jaspal Jazz Singh and Eastside Funding, LLC ("Purchaser Defendants") from either seeking to evict Nguyen from the Property, including by initiating an unlawful detainer action, or by selling, transferring, conveying, or otherwise encumbering the Property. Dkt. No. 13 at 2. Because Nguyen has not established likelihood of success on the merits as detailed below, the Court denies the motion for a TRO.

### I. BACKGROUND

In 2005, Duan Van Tran, Nguyen's late husband, obtained a mortgage loan for $436,800 ("Loan") from American Mortgage Network, Inc. which was secured by a deed of trust ("DOT")

that encumbered the Property. Dkt. No. 43 ¶ 17, Dkt. No. 38-2 at 2–5. The DOT was subsequently re-assigned to Defendant U.S. Bank N.A. ("U.S. Bank"). Dkt. No. 38-3 at 2–4. In May 2014, a quitclaim deed was recorded, conveying the Property from Dua Tran to Nguyen. Dkt. No. 43 ¶ 16. In June 2023, the Loan went into default following a missed monthly payment. Dkt. No. 38-4 at 2. At the time of the default, U.S. Bank owned the Loan, and Defendant Select Portfolio Servicing, Inc. ("SPS") serviced the Loan. *See* Dkt. No. 38-4 at 2–5. Defendant Clear Recon Corp. ("CRC") is the trustee under the DOT. Dkt. No. 43 ¶ 2.

On April 4, 2025, CRC recorded a notice of trustee's sale ("NOTS"). Dkt. No. 32 at 3, Dkt. No. 33-4. The NOTS explained that a trustee foreclosure sale would take place on August 15, 2025, and "[t]he defaults … must be cured by 8/4/2025 (11 days before the sale date) to cause a discontinuance of the sale." Dkt. No. 33-4 at 4. The NOTS also stated this is "THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME" and advised Nguyen to contact an attorney or housing counselor "to assess [her] situation and refer [her] to mediation" if eligible. *Id.* at 5. Neither Nguyen nor Nguyen's daughter and authorized agent, Julie Tran ("Tran"), tendered cure by the deadline referenced in the NOTS, August 4, 2025.

In the months leading up to the August 2025 foreclosure sale, Tran had communicated with SPS to attempt to resolve the default, and at one point applied for a loan modification, which Nguyen alleges SPS denied. Dkt. No. 43 ¶¶ 21–22. On July 23, 2025, Nguyen alleges that Tran emailed SPS requesting a "workout plan to keep the home[,]" but never received a response. *Id.* ¶ 23, *id.* at 34.

SPS call logs reflect that Tran called SPS on August 8, 2025 to request a reinstatement quote. Dkt. No. 38-6 at 3. The entry from that day further states that Tran was aware of the August 15, 2025 sale date and was also aware that she "would need to send certified funds before the sale date[.]" *Id.* Consistent with Nguyen's allegation, the call log also reflects that Tran was directed

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 2

to "contact the [loan] beneficiary's foreclosure counsel, Aldridge Pite, LLP." Dkt No. 43 ¶ 24. Nguyen alleges Tran left a voicemail for the Aldridge Pite, LLP attorney, which was never returned. *Id.* ¶ 25. Nguyen further alleges that on August 11, 2025, SPS sent a letter stating

> You may cure the delinquency by paying the Total Reinstatement Amount, which has been calculated for you in the table below. The Total Reinstatement Amount expires at 5:00pm Eastern Time on the Reinstatement Good to Date. After that date you must contact us for a new Reinstatement Quote … Figures quoted above are subject to final verification by the Note Holder. SPS reserves the right to either reject or apply funds received after the expiration of this Reinstatement quote[.]

*Id.* at 36–37.[1] The statement provided a "Reinstatement Good to Date" of August 14, 2025. *Id.* at 36. Neither Tran nor Nguyen attempted to cure the delinquency by paying the past due amount by August 14, 2025.

On the morning of the August 15, 2025 foreclosure sale, which was scheduled to take place at 10:00 a.m., Tran made multiple phone calls and sent multiple emails to representatives at both SPS and CRC. Nguyen asserts that, at the direction of a CRC representative, at 9:07 a.m., Tran emailed a screenshot of Nguyen's bank account, which contained funds sufficient to cure the default on the Loan,[2] as well as a request to stop the auction. *Id.* ¶ 29–30. Three minutes after Tran sent that email, a CRC representative replied: "Please reach out directly to SPS at Loss Mitigation hotline[.]" *Id.* ¶ 33. Tran called the hotline, where she was placed on hold, transferred between departments, and "ultimately [was told] that [SPS] could not do anything to stop the sale." *Id.* ¶ 34. Tran, understandably frustrated, hung up and re-dialed the SPS hotline. During this second call with SPS, she was directed to an SPS Ombudsman representative, who instructed Tran

---

[1] It is unclear from Nguyen's complaint whether she alleges that the Reinstatement Quote dated August 11, 2025 was sent in response to her call made the same day, or as a result of a different request. Regardless, it is undisputed that she requested and received the Reinstatement Quote four days before the sale.

[2] Nguyen alleges that she had "funds sufficient to cover all but a de minimis, undisclosed shortfall of $325.87 of the actual amount Defendants would later claim was due." Dkt. No. 43 ¶ 31.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 3

to wire the amount to cure the default, take a picture of the wire confirmation, and email the proof of the wire transfer to "ombudsman@spservicing.com." *Id.* ¶ 35.

Having received no funds, CRC cleared the sale of the property to proceed at 9:24 a.m. Dkt. No. 44 ¶ 4. In successive emails to CRC at 9:46 a.m. and 9:50 a.m., Tran both sought advice from CRC and affirmatively stated that "SPS states only you can stop the sale." Dkt. No. 43 ¶¶ 36–37. Nguyen alleges that, at 9:52 a.m., CRC emailed Tran: "Your request has been reviewed and we will be proceeding to sale." *Id.* ¶ 38.

At 10:22 a.m., Nguyen sent a wire transfer to SPS for the amount listed in the expired Reinstatement Quote from the August 11, 2025 letter. *Id.* ¶ 40. At 10:46 a.m., the Property was sold at auction. Dkt. No. 44 at ¶ 6, *id.* at 4. Defendant Jaspal Singh bought the Property, which was financed by Defendant Eastside Funding, LLC ("Eastside Funding"). Dkt. No. 33 ¶ 12, Dkt. No. 44 at 4. At 10:49 a.m., Tran advised CRC via email that she had wired them the funds. Dkt. No. 33 ¶ 13. At 11:50 a.m., approximately one hour after the sale, SPS received $73,021.54 via wire transfer. Dkt. No. 38-7 at 2. At 1:35 p.m., SPS advised CRC that Tran had wired SPS the funds at around 11:40 a.m. that day. Dkt. No. 33 ¶ 13.

On September 11, 2025, Nguyen sued CRC, SPS, U.S. Bank, Jaspal Jazz Singh, Eastside Funding, and John and Jane Does 1-10 in King County Superior Court. Dkt. No. 2-1. On September 19, 2025, the case was removed to federal court. Dkt. No. 1. On September 24, 2025, Nguyen filed the instant motion for a TRO. Dkt. No. 13. Defendants filed responses on September 29, 2025 and Nguyen filed a reply on September 30, 2025. The motion is now ripe for review. *See* Dkt. Nos. 13, 32, 34, 35.

## II.   ANALYSIS

**A.   Legal Standard**

Motions for TROs and preliminary injunctions are governed by "substantially identical" standards. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a TRO must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) a balancing of equities tips in favor of a TRO; and (4) an injunction is in the public interest. *Id.* at 20. To obtain injunctive relief, "plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

The Ninth Circuit applies a "sliding scale" approach under which a weaker claim on the merits may still justify a preliminary injunction where the "plaintiff demonstrates … that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citing *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). "[T]he more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* at 1133 (citing *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). The approach "permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.* (citing *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

B.     **Washington's Deed of Trust Act ("DTA")**

"In Washington, a mortgage creates nothing more than a lien in support of the debt which it is given to secure." *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 38 (Wash. 2012). Washington's DTA provides for a statutory deed of trust, which "is a form of a mortgage." *Id.* (citing 18 William B. Stoebuck & John W. Weaver, Washington Practice: Real Estate: Transactions § 17.3, at 260 (2d ed. 2004)). The deed of trust system creates a three-party mortgage system where land is conveyed by a borrower (also, "grantor") to a "trustee," who holds title in the deed of trust as security for a loan issued by the lender (also, "beneficiary"). *Id*. Washington's DTA authorizes the foreclosure of deeds of trust conveying real property without judicial oversight. Wash. Rev. Code § 61.24.020; *Bain*, 285 P.3d at 38. Washington courts have recognized that the DTA should be construed to advance three goals: (1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles. *Cox v. Helenius,* 693 P.2d 683, 685–86 (Wash. 1985).

The DTA "contains several safeguards to ensure that the nonjudicial foreclosure process is fair and free from surprise." *Cox*, 693 P.2d at 686. For example, the DTA sets forth multiple requisites to a trustee's foreclosure sale, including that a default must have occurred, and a notice of default must be given to the borrower at least 30 days before recording a notice of sale, including a copy "posted in a conspicuous place on the premises." Wash. Rev. Code § 61.24.030. Despite its safeguards, courts have observed that the DTA must be construed in borrowers' favor "because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales." *Udall v. T.D. Escrow Servs., Inc.*, 154 P.3d 882, 890 (Wash. 2007).

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 6

**C.    Nguyen Fails to Show Likelihood of Success on the Merits of Her Claims.**

Nguyen seeks an injunction to both prevent her imminent eviction and to prevent the Purchaser Defendants from any further transfer of the Property while this case is pending. She argues a TRO is necessary to preserve the status quo while she litigates the merits of her declaratory and quiet title claims. Dkt. No. 13 at 2. Nguyen argues she is likely to succeed on her claims for two principal reasons: (1) the sale was void ab initio because her tender of cure extinguished any statutory authority under the DTA to proceed with a foreclosure sale; and (2) the sale was void ab initio because the doctrines of waiver and equitable estoppel apply to Defendants' instructions to Tran on the morning of the sale. *Id.* at 9–13. Alternatively, Nguyen argues she raises serious questions going to the merits of these issues as well as whether the trustee breached its duties. *Id.* at 13–14. As detailed below, the Court concludes she is unlikely to prevail on her claims.

1.    <u>Nguyen's late wire transfer did not void the sale.</u>

Nguyen argues that CRC's power of sale as trustee was extinguished when she wired $73,021.54 to SPS on August 15, 2025 at 10:22 a.m. Dkt. No. 13 at 9–11 (citing Wash. Rev. Code § 61.24.030(3)). Though the Property was not sold until 10:46 a.m., it is undisputed that SPS did not receive the wire transfer until nearly an hour after the sale. Nguyen nonetheless argues that her tender extinguished the trustee's statutory authority the moment it was sent. Unfortunately for Nguyen, the DTA does not support this argument.

Although the DTA allows borrowers to cure a default before a foreclosure sale, a borrower's power to terminate a sale is not unlimited, and is prescribed by specific procedural requirements in the statute. Relevant here, the DTA specifies that borrowers may cure a default and terminate a trustee's sale "[a]t any time prior to the eleventh day before the date set by the trustee for the sale in the recorded notice of sale." Wash. Rev. Code § 61.24.090(1). As to the

Property, that statutory deadline fell on August 4, 2025, which was provided to Nguyen in the NOTS. "When a party's authority to act is prescribed by a statute and the statute includes time limits … failure to act within that time violates the statute and divests the party of statutory authority." *Albice v. Premier Mortg. Servs. of Washington, Inc.*, 276 P.3d 1277, 1281–82 (Wash. 2012). Nguyen's statutory power to terminate the sale was prescribed by the DTA, and she failed to act within the stated time limits. Thus, under a plain reading of the DTA, Nguyen's tender of payment on the day of the sale was not a "cure" of the default that would automatically terminate the sale.[3] Nguyen cites no authority for the proposition that a borrower in default can automatically terminate the trustee's power of sale by tendering outside the statutory period.

*Albice v. Premier Mortgage Services* does not hold otherwise. Nguyen cites that case for the proposition that "a foreclosure sale conducted after a pre-sale cure extinguishing the trustee's authority is void." Dkt. No. 13 at 9 (citing 276 P.3d 1277). But the facts in *Albice*, which involved "nonjudicial foreclosure proceedings [] marred by repeated statutory noncompliance" do not fit those alleged here. 276 P.3d at 1285. Nguyen does not challenge Defendants' compliance with the statutory procedural requirements for sale, such as providing the required notice or the timeliness of the sale, and instead makes arguments based solely on equitable principles. *Cf. Albice*, 276 P.3d at 1281–82 (finding foreclosure sale invalid where trustee continued the sale for 161 days in clear violation of the DTA's requirement that a foreclosure sale not be continued beyond 120 days). Because Nguyen does not allege defects like those identified in *Albice*, her argument on this point fails.

---

[3] Moreover, Nguyen's attempted cure fails for the additional reason that the funds were not received until after the sale was completed. While Nguyen argues that she was entitled to terminate the sale by virtue of *tendering* the cure amount, such that her 10:22 a.m. transmission should have voided the sale, the DTA provides that it is the "receipt" of a such payment that discontinues the sale (if received eleven days before the sale). Wash. Rev. Code § 61.24.090(3) ("Upon receipt of such payment the proceedings shall be discontinued"). Here, it is undisputed that funds were not received until one hour after the sale.

2. <u>Nguyen is not likely to succeed on the merits of her waiver and estoppel arguments.</u>

Nguyen concedes that she did not exercise her right under Wash. Rev. Code § 61.24.90(1) to terminate the sale by paying the reinstatement amount "prior to the eleventh day before the date set by the trustee for the sale in the recorded notice of sale," which would have been August 4, 2025. Dkt. No. 13 at 10. Instead, Nguyen argues that SPS "waived" its right to the 11-day statutory deadline for borrowers to cure a default. Dkt. No. 13 at 9–13. In other words, Nguyen argues that because SPS communicated with her about curing the default inside the 11-day window, her wire transfer amounted to a timely, complete cure of default, which terminated CRC's power to sell the Property. Dkt. No. 13 at 11–13. Defendants counter that Nguyen's tender failed to cure the default because it was ineffective under the DTA (Dkt. No. 32 at 6–8, Dkt. No. 34 at 10–11), and that the facts do not support finding waiver or estoppel (Dkt. No. 32 at 8–9, Dkt. No. 34 at 13). The Court agrees with Defendants.

Nguyen argues that the representations that SPS made on the day of the sale, as well as its August 11, 2025 letter providing a "Reinstatement Good To" date of August 14, 2025, suggest that SPS waived the 11-day statutory deadline. Dkt. No. 13 at 10. Relying on *Schroeder v. Excelsior Management Group* (Wash. 2013), Nguyen argues that "a waiver can be implied from 'such conduct as warrants an inference of the relinquishment of such right.'" Dkt. No. 13 at 10 (citing 297 P.3d 677, 683). *Schroeder* cuts against finding waiver here. There, the Washington Supreme Court held that the right to judicial foreclosure of agricultural land cannot be waived, even where a borrower had expressly agreed to waive his rights under the statute. *Schroeder*, 297 P.3d at 683. The court noted that the DTA provision at issue "is not a rights-or-privileges-creating statute" and "[i]nstead, sets up a list of requisites to a trustee's sale." *Id.* (citation modified). In other words, rather than creating waivable rights, the DTA establishes "limits on the trustee's power to foreclose without judicial supervision." *Id.*

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 9

The same is true here.  The DTA establishes a borrower's power to discontinue a trustee's foreclosure sale through cure, "[a]t any time prior to the eleventh day before the date set by the trustee for the sale[.]" Wash. Rev. Code § 61.24.090 (section titled, in part, "Curing defaults before sale").  Nguyen's waiver argument asks the Court to either construe Defendants' communications as enlarging the termination right afforded to her by the DTA, or not give effect to the time limits set by the DTA, which it cannot do.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (a "cardinal principle of statutory construction [is] that we must give effect, if possible, to every clause and word of a statute").  Further, the Washington Supreme Court has explained that in construing the DTA, courts "apply waiver only where it is equitable under the circumstances and where it serves the goals of the act." *Albice*, 26 P.3d at 1283.  And "once a property is sold, the [DTA] favors purchasers over property owners and other borrowers by giving preference to [the DTA's] third goal—stability of land titles." *Id.*  At this juncture, a finding of waiver would contravene the DTA's clear language, as well as its broader goal of promoting the stability of land titles.

Further, the facts in the record are inconsistent with waiver.  The record shows that SPS advised Nguyen that the August 11, 2025 Reinstatement Quote provided a cure deadline of August 14, 2025 at 5 p.m. ET and made clear that "SPS reserves the right to either reject or apply funds received after the expiration of this Reinstatement quote[.]" Dkt. No. 43 at 36–37.  Moreover, while Nguyen alleges that CRC and SPS representatives gave her conflicting information about the impact of wiring funds on the date of the sale, she also concedes that on the morning of August 15, an SPS representative told Tran that there was nothing SPS could do to stop the sale. *Id.* ¶ 34.  She further concedes that CRC informed her before the sale that it would proceed. *Id.* ¶ 38.  While the Court is sympathetic to the arguably mixed messages Tran received on the morning of the sale, by that point, Nguyen's right to terminate the sale had already expired.  It is undisputed that Nguyen did not attempt to cure either by the statutory deadline (August 4, 2025) or the SPS-

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 10

provided deadline (August 14, 2025 at 5 p.m. ET). On these facts, the Court cannot find waiver. *See Cameron v. Acceptance Cap. Mortg. Corp.,* No. C13-1707 RSM, 2013 WL 5664706, at *4 (W.D. Wash. Oct. 16, 2013) (refusing to find waiver where "Plaintiffs have neither pointed to specific promises made in the letter regarding postponement of the sale … nor irregularities in the Notice of Trustee's sale or sale procedures.").

Finally, Nguyen's estoppel argument is also unlikely to succeed. Nguyen concedes that the amount wired on August 15, 2025 was insufficient to satisfy the full deficiency, because the Reinstatement Quote had expired the day before. However, as explained above, because Nguyen did not cure the default before the sale, the trustee was authorized to proceed, and the discrepancy between the tender and the full amount owed is immaterial.

In sum, Nguyen is unlikely to prevail on the merits of her claims.

3. <u>Nguyen does not raise serious questions to warrant temporary injunctive relief.</u>

In the alternative, Nguyen argues that under the Ninth Circuit's "sliding scale" approach, she has raised "serious questions" that warrant temporary injunctive relief. Dkt. No. 13 at 13–14. As explained above, Nguyen has not raised serious questions as to whether SPS waived the 11-day deadline or the effect of Nguyen's wire transfer which was received after the sale occurred. Nguyen argues she has raised a serious question about "[t]he scope of a trustee's duty of good faith to pause a sale when it has credible knowledge of an imminent, beneficiary-directed cure." Dkt. No. 13 at 14. Though the DTA makes clear that a trustee has certain duties in the context of a borrower's attempt to cure, *see* Wash. Rev. Code § 61.24.090, Nguyen cites no authority suggesting the trustee breached those duties here.

**D.    On this Record, Injunctive Relief is Contrary to the DTA.**

Defendants also argue that the Court cannot enter injunctive relief because Nguyen waived her right to object to the sale when she failed to bring an action to enjoin it under Wash. Rev. Code

§ 61.24.130.  Dkt. No. 34 at 11.  The Court agrees that this additional reason compels denial of the motion for TRO.

Even if the Court were to assume that Nguyen is likely to prevail on her claims, the appropriate relief is money damages, not injunctive relief.  Wash. Rev. Code § 61.24.127.  The DTA provides that borrowers may seek to enjoin a sale, but that such relief is generally unavailable after the sale has taken place.  *See id.*; *see also* Wash. Rev. Code § 61.24.130.  Specifically, while an aggrieved borrower does not waive certain post-sale statutory and damages claims, failure to enjoin a sale bars "any remedy at law or in equity other than monetary damages." Wash. Rev. Code § 61.24.127(2)(b).  Consistent with the statute, the Washington Supreme Court has held that "waiver of any postsale contest occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." *Plein v. Lackey*, 67 P.3d 1061, 1067 (citations omitted) (refusing to enter injunction unwinding sale where borrower was given notice of the trustee's sale, the foreclosure, and his right to seek a restraining order to enjoin the sale).

Here, Nguyen has not alleged that she lacked notice of the sale or her pre-sale remedies, nor does she deny that she was presented with multiple pre-sale opportunities to cure the default.  Nguyen filed this suit seeking injunctive relief nearly one month after the sale.  In the absence of defects in the trustee's sale, the Court is unable now to grant injunctive relief or otherwise unwind the trustee's sale.  *Cameron*, 2013 WL 5664706, at *4 (denying request for post-sale injunction where borrower alleged misrepresentations by trustee).

//

//

//

### III. CONCLUSION

For these reasons, the Court DENIES Nguyen's motion for a TRO.

Dated this 6th day of October, 2025.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge