HONORABLE KYMBERLY K. EVANSON

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

Hat Nguyen,

Plaintiff,

v.

Clear Recon Corp., a Washington State Corporation; Select Portfolio Servicing, Inc., a Utah Corporation; U.S. Bank N.A., successor trustee to Bank of America, N.A., successor to LaSalle Bank, N.A., as trustee, on behalf of the holders of the Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-9; Jaspal Jazz Singh, an Individual; Eastside Funding, LLC, a Washington Limited Liability Company; and John and Jane Does 1-10,

Defendants.

No. 2:25-cv-01823-KKE

RESPONSE TO DEFENDANTS SELECT PORTFOLIO SERVICING, INC. AND U.S. BANK, N.A. AS TRUSTEE'S MOTION TO DISMISS

Noted for hearing on November 18, 2025 without oral argument

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

## I.    INTRODUCTION

Plaintiff Hat Nguyen submits this Opposition to the Motion to Dismiss filed by Defendants Select Portfolio Servicing, Inc. ("SPS") and U.S. Bank, N.A. (the "Trust") pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motion seeks to prematurely resolve fact-intensive questions—including waiver, estoppel, and the existence of a presale cure agreement—that are inappropriate for determination at the pleading stage. When the well-pleaded factual allegations in the Second Amended Complaint ("SAC") and its attached exhibits are accepted as true, they state plausible claims that Defendants wrongfully foreclosed on Ms. Nguyen's home because, at the moment of the auction, they lacked the legal authority to conduct the sale. Defendants' motion rests on the flawed legal premises that a waivable statutory deadline is an absolute bar to reinstatement and that post-sale finality statutes can retroactively validate a sale that was a legal nullity. As demonstrated herein, both premises are contrary to Washington law.

As the SAC alleges that Defendants created a last-minute crisis, provided explicit instructions for a day-of-sale cure, and then proceeded with the auction mere minutes after Plaintiff performed precisely as directed. This conduct, which includes the servicer's waiver of statutory deadlines and the trustee's abdication of its non-delegable duty of neutrality, extinguished the power of sale and rendered the subsequent transaction void *ab initio*.

Because the SAC states plausible claims for relief under Washington and federal law, the Motion to Dismiss should be denied in its entirety.

## II.    FACTUAL BACKGROUND

This case involves the wrongful foreclosure of Plaintiff Hat Nguyen's longtime family home, which proceeded despite her full compliance with the servicer's explicit, last-minute instructions to cure the default. The SAC and its attached exhibits allege that Defendants engaged in a coordinated, bad-faith obstruction of the cure, conducted a sale without legal authority, and then attempted to ratify the void transaction, stripping Ms. Nguyen of her home

1

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

and substantial equity.

### A.    The Servicer-Manufactured Crisis

The crisis on the morning of the sale was manufactured by the loan servicer, Select Portfolio Servicing, Inc. ("SPS"). A foreclosure auction was set for 10:00 a.m. on August 15, 2025. (SAC ¶ 30). Four days prior, on August 11, SPS provided Plaintiff's agent, Julie Tran, with a Reinstatement Quote that was expressly "Good To Date: August 14, 2025," the day before the sale. (SAC ¶ 26; Ex. C). Unbeknownst to Ms. Tran, this quote omitted over $1,200 in recently assessed fees, creating an undisclosed shortfall. (SAC ¶ 27). By providing a deficient quote that expired just hours before the auction, SPS created an unavoidable last-minute emergency.

### B.    Day-of-sale obstruction and servicer-directed cure

On the morning of the sale, Ms. Tran's documented efforts to cure were met with a classic "run-around." At 9:07 a.m., she emailed the trustee, Clear Recon Corp. ("CRC"), with proof of funds sufficient to cover the quoted amount, pleading for them to stop the auction. (SAC ¶ 30; Ex. D). CRC deflected, instructing her at 9:10 a.m. to call SPS. (SAC ¶ 33). After being shuttled between SPS departments, Ms. Tran was finally transferred to the SPS Ombudsman department—the servicer's highest authority for dispute resolution.

The Ombudsman representative gave Ms. Tran an explicit directive: "wire the money, take a picture of the wire confirmation, and email the proof of the wire to the SPS Ombudsman department." (SAC ¶ 35). While Ms. Tran was preparing to follow this instruction, CRC sent a dispositive email at 9:52 a.m. stating: "Your request has been reviewed and we will be proceeding to sale." (SAC ¶ 38).

Nevertheless, relying on the Ombudsman's binding directive, Ms. Tran initiated an irrevocable wire transfer to SPS for the full quoted amount at 10:22 a.m. (SAC ¶ 40; Ex. E). This act constituted a perfected tender that extinguished the default. Just two minutes later, at 10:24 a.m., CRC proceeded with the foreclosure auction. (SAC ¶ 41). At 10:29 a.m., Ms. Tran emailed

RESPONSE TO DEFENDANTS                                                  Devlin Law Firm
SELECT PORTFOLIO SERVICING, INC.                                      526 Gilpin Avenue
AND U.S. BANK, N.A. AS TRUSTEE'S                                 Wilmington, DE 19806
MOTION TO DISMISS                                                       Tel: (302) 449-9010

proof of the wire to the SPS Ombudsman, who acknowledged receipt. (SAC ¶¶ 42-43; Ex. F).

### 1. Post-Sale Ratification of the Void Sale

Defendants' bad faith continued post-sale. SPS's own mortgage statement, dated the day of the sale, contains a dispositive admission: it acknowledges "Funds Received Under Review" but notes they were "not accepted." (SAC ¶ 52; Ex. H). This document proves SPS made a conscious, post-sale decision to reject a cure it had previously authorized.

CRC, in turn, ratified the wrongful sale. At 1:35 p.m. on the day of the sale, SPS notified CRC that it had received the reinstatement funds. (SAC ¶ 59). A neutral trustee would have exercised its statutory authority to investigate and rescind the sale. Instead, CRC took no action. Six days later, it executed and delivered the Trustee's Deed, cementing its complicity. (SAC ¶ 48). When confronted, counsel for CRC and SPS materially misrepresented that the wire was sent after the sale, a claim directly contradicted by the time-stamped wire receipt. (SAC ¶ 58).

### III. ARGUMENT

Defendants' Motion to Dismiss must be denied because it is predicated on resolving fact-intensive questions that are improper at the pleading stage. Under the governing standard of Federal Rule of Civil Procedure 12(b)(6), this Court must accept as true the well-pleaded facts in the SAC, which, supported by contemporaneous exhibits, plausibly allege that the foreclosure sale of Ms. Nguyen's home was conducted without legal authority and is therefore void. Because the SAC states cognizable claims for relief, the motion should be denied in its entirety.

### A. The Rule 12(b)(6) Standard Precludes Dismissal

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the case. The Court is required to accept all well-pleaded factual allegations as true and to construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in her favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper only if the complaint fails to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

Defendants' motion consistently violates this standard. It asks the Court to disregard Plaintiff's detailed factual narrative and instead adopt Defendants' self-serving interpretation of the events on the morning of the sale. Resolving these factual disputes, including whether the servicer waived the cure deadline, whether a pre-sale cure was perfected, and whether the trustee abdicated its duties, is the province of the factfinder, not a court ruling on the pleadings. As shown below, the SAC's allegations are more than sufficient to state plausible claims for relief.

**B.** **THE FORECLOSURE SALE IS VOID BECAUSE THE TRUSTEE LACKED AUTHORITY TO CONVEY TITLE**

Under Washington's Deeds of Trust Act (DTA), ch. 61.24 RCW, a nonjudicial foreclosure sale is a legal nullity if the trustee lacks the statutory authority to conduct it. That authority is contingent on two fundamental and sequential prerequisites: (1) a continuing, uncured default, and (2) the physical delivery of an acknowledged trustee's deed to convey title. If the default is cured *before* the trustee's deed is delivered, the trustee's power to convey title is extinguished. Any subsequent deed delivered without this authority is void *ab initio* and passes no interest in the property. Post-sale finality statutes and deed recitals cannot retroactively validate a transaction that was a legal nullity from its inception.

**1.** **Title Passes Only Upon Physical Delivery of an Acknowledged Deed.**

The DTA establishes a bright-line rule for the conveyance of title in a nonjudicial foreclosure. It is explicit that the auction itself does not transfer title. Rather, legal title transfers at a single, discrete moment: the physical delivery of the trustee's deed. RCW 61.24.050(1) states in relevant part:

> The trustee's deed shall operate to convey to the purchaser the interest in the property which the grantor had … **at the time of the physical delivery of the trustee's deed** … .

RCW 61.24.050(1) (emphasis added). Courts in this district interpreting this provision have held that it means exactly what it says. The fall of the gavel at the auction creates only an executory contract for sale, contingent on the trustee's continuing authority to perform. This "physical

4

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

delivery" rule is not a mere procedural formality; it is the operative legal event that transfers title from the grantor to the purchaser. The legal act of conveyance, the "sale" for title purposes, is the physical delivery of the deed. *See In re Lopez*, 596 B.R. 371, 379–81 (Bankr. W.D. Wash. 2019) (holding that under the plain language of RCW 61.24.050(1), a sale is not complete until deed delivery, and intervening events, like a bankruptcy filing, can prevent completion). Until that moment, the grantor retains legal title, and the purchaser holds only an equitable interest. *See In re Betchan*, 524 B.R. 830, 833-34 (Bankr. E.D. Wash. 2015).

In *Betchan*, the court voided a post-auction deed delivery because the deed itself was not validly acknowledged under RCW 64.04.020 until after the borrower filed bankruptcy. *Id.* at 832. The *Betchan* court correctly identified the first sentence of RCW 61.24.050(1) as the provision that explicitly "identifies the timing of a conveyance." *Id.* at 834. This delivery-centric rule creates a critical window of time between the auction and the final conveyance. As made clear in *In re Nelson*, events occurring within this window can be dispositive. 2017 Bankr. LEXIS 529 (Bankr. W.D. Wash. Feb. 24, 2017). There, the court held that the post-auction, pre-delivery automatic bankruptcy stay rendered any subsequent delivery of the trustee's deed void. *Id.* at *10. The court reasoned that the act of delivering a deed is not merely ministerial because the trustee retains discretion under the DTA to not deliver it. *Id.* at *10-11. The delivery is thus an *ultra vires* act if the trustee's authority has been suspended or, as here, extinguished by a pre-delivery cure.

### a. The Bankruptcy Context of the Controlling Case Law Reinforces, Rather Than Limits, Its Applicability.

The fact that *Nelson*, *Betchan*, and *Lopez* arose in bankruptcy does not diminish their applicability; to the contrary, it reinforces their controlling interpretation of the DTA. These cases are persuasive not because of federal bankruptcy principles, but because the bankruptcy court was required to analyze the precise nature and timing of state-created property rights under the DTA. It is a bedrock principle that property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). The automatic stay in bankruptcy does not

5

| | |
|---|---|
| RESPONSE TO DEFENDANTS | Devlin Law Firm |
| SELECT PORTFOLIO SERVICING, INC. | 526 Gilpin Avenue |
| AND U.S. BANK, N.A. AS TRUSTEE'S | Wilmington, DE 19806 |
| MOTION TO DISMISS | Tel: (302) 449-9010 |

create new property rights; it merely freezes existing rights as defined by state law. The stay simply served as the intervening legal event that made the timing of title transfer dispositive. In our case, the intervening legal event is the perfected, servicer-directed cure. The underlying legal analysis is identical.

### 2. Here, the Default Was Cured and Authority Was Extinguished Days Before Deed Delivery.

The facts alleged in the SAC support the allegations that the trustee here did not have the legal authority to convey title to the purchaser. The relevant facts are as follows:

- **Auction:** August 15, 2025, at 10:24 a.m. (SAC ¶ 41).

- **Perfected Tender & Cure:** August 15, 2025, at 10:22 a.m. (SAC ¶ 40).

- **Servicer & Trustee's Confirmed Knowledge of the Cure:** August 15, 2025, at 1:35 p.m., when SPS confirmed to CRC that it had received the reinstatement funds. (SAC ¶ 59).

- **Physical Delivery of the Trustee's Deed:** August 21, 2025 (execution and issuance), and some time thereafter (physical delivery). (SAC ¶ 48).

Even if Defendants dispute the legal effect of the 10:22 a.m. tender, there is no factual dispute that by 1:35 p.m. on August 15th, both the trustee, the servicer, and U.S. Bank, through its agency relationship with SPS, had actual, confirmed knowledge that the reinstatement funds had been sent as directed. This occurred six days before the trustee even executed and issued the trustee's deed, much less physically delivered it to the purchaser. Thus, any delivery of the trustee's deed after that authority has been extinguished is an ultra vires act that cannot transfer title, rendering the purported sale void. *Betchan*, 524 B.R. at 834; *Nelson*, 2017 Bankr. LEXIS 529, at *10.

### 3. The Pre-Delivery Cure Was Legally Effective.

The consensual cure was effective for two primary reasons. First, the 11-day cure deadline in RCW 61.24.090(1) is a waivable, procedural right that benefits the beneficiary; it is not a non-waivable jurisdictional bar. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94,

6

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

107 & n.7 (2013).

procedural right, and the SAC pleads sufficient facts to establish waiver by SPS and equitable estoppel. On the morning of the sale, the SPS Ombudsman provided an "explicit instruction[]" to wire the reinstatement amount, constituting conduct that warrants an inference of waiver of the deadline. *Lybbert v. Grant Cnty.*, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000); (SAC ¶ 35). This same instruction, upon which Plaintiff justifiably relied, equitably estops SPS from now denying the cure's validity. *See Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993).

Second, Plaintiff's irrevocable wire transfer at 10:22 a.m. was a perfected, common-law tender that extinguished the default. Because SPS directed payment by wire, UCC Article 4A governs when the tender became legally effective. Payment occurs when the beneficiary's bank "accepts" the payment order, an automated event that plausibly occurred before the 10:24 a.m. auction. RCW 62A.4A-406(a); RCW 62A.4A-209(b)(2). SPS cannot leverage processing delays inherent in the payment method it directed to defeat the cure, and its subsequent bad-faith rejection of the funds was a legal nullity. *See Murray v. O'Brien*, 56 Wash. 361, 371-72 (1909).

### a.    The 11-Day Statutory Deadline Was Waived and Defendants Are Equitably Estopped From Asserting It.

The 11-day cure deadline in RCW 61.24.090(1) is a waivable, procedural right benefitting the beneficiary, not a non-waivable jurisdictional bar. *See Schroeder*, 177 Wn.2d at 107 & n.7, 297 P.3d 677. The Washington Supreme Court has squarely held that such "technical procedural details" are waivable. *Id.* The statute is silent on whether a beneficiary may voluntarily accept a late cure, and under the DTA's borrower-favoring canon of construction, such silence must be construed in favor of the borrower. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 93, 285 P.3d 34 (2012).

The SAC pleads sufficient facts to establish waiver and equitable estoppel. Waiver is the "intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *Lybbert v. Grant Cnty.*, 141 Wn.2d 29, 35, 1 P.3d

7

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

1124 (2000). On the morning of the sale, the SPS Ombudsman provided an "explicit instruction[]" to wire the money and email proof of the transfer. (SAC ¶ 35). This directive, coming from the servicer's highest authority for dispute resolution, is precisely the type of "conduct as warrants an inference" of relinquishment.

Independently, these same facts establish a plausible claim for equitable estoppel. To establish estoppel, a party must show: (1) an act or statement inconsistent with a later claim; (2) action by another in reasonable reliance on that act; and (3) injury to the relying party if the first party is allowed to contradict the original act. *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993). Here, each element is met. The Ombudsman's instruction to wire funds on the morning of the sale is fundamentally inconsistent with Defendants' current position that any cure after August 4 was legally impossible. Plaintiff's agent justifiably relied on this specific directive by immediately initiating the irrevocable wire transfer. Finally, Plaintiff suffered the ultimate injury—the wrongful foreclosure of her home—as a direct result of Defendants' repudiation of their own instruction. Whether this conduct constitutes waiver or estoppel is a fact-intensive inquiry that is improper to resolve on a Rule 12(b)(6) motion.

### b.      Plaintiff's Pre-Auction Wire Transfer Was a Perfected Tender That Cured the Default.

Plaintiff's irrevocable wire transfer at 10:22 a.m. was a perfected, common-law tender that extinguished the default. Plaintiff's wire was an effective, unconditional tender of the reinstatement amount in the exact form and manner SPS's Ombudsman specified. Performance of that agreement is governed by the common law of tender and, because a wire was specified, by Washington's Uniform Commercial Code. Under these principles, Plaintiff's was legally perfected at 10:22 a.m., (SAC ¶ 40; Ex. E), prior to the auction, and SPS's subsequent rejection of the funds cannot retroactively invalidate it.

At common law, a mere "proposal or proposition" to pay is insufficient to constitute a valid tender. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 170 (2016) (Thomas, J., concurring). A legally effective tender requires the debtor to "actually produc[e]" the sum owed.

8

| RESPONSE TO DEFENDANTS | Devlin Law Firm |
|---|---|
| SELECT PORTFOLIO SERVICING, INC. | 526 Gilpin Avenue |
| AND U.S. BANK, N.A. AS TRUSTEE'S | Wilmington, DE 19806 |
| MOTION TO DISMISS | Tel: (302) 449-9010 |

*Id.* Plaintiff's irrevocable wire transfer at 10:22 a.m. was not a proposal; it was the "actual production" of the funds as demanded by SPS—a consummated act of performance. Under Washington law, this tender was perfected when Plaintiff performed an irrevocable act demanded by the creditor. *Lutz v. Gatlin*, 22 Wn. App. 424, 432, 590 P.2d 359 (1979). Here, the irrevocable act demanded was the initiation of a wire transfer.

Because SPS directed payment by wire, Washington's UCC dictates when this tender became legally effective. Under UCC Article 4A, payment from the originator (Plaintiff) to the beneficiary (SPS) occurs when the beneficiary's bank accepts the payment order. RCW 62A.4A-406(a). While the precise moment of inter-bank acceptance under RCW 62A.4A-209 is a question of fact that will be confirmed in discovery, the Second Amended Complaint alleges sufficient facts to create a plausible—indeed, a necessary—inference that acceptance occurred before the auction. The SAC alleges that Plaintiff initiated the irrevocable wire transfer from her BECU account at 10:22 a.m. (SAC ¶ 40; Ex. E). Given that wire transfers are designed for near-instantaneous settlement, it is more than plausible to infer that SPS's bank accepted the payment order in the minutes immediately following, and thus prior to the auction at 10:24 a.m. In any event, this statutory legal event precedes, and is independent of, a servicer's internal accounting and subsequent posting of the funds. At minimum, the exact timing of acceptance under UCC Article 4A is a material factual dispute that cannot be resolved on a motion to dismiss.

Furthermore, the UCC recognizes tender and discharge principles: tender of full payment of an amount due on an instrument discharges the obligation to pay interest on the amount tendered after the due date. RCW 62A.3-603(c). Defendants are equitably estopped from defeating a perfected cure by citing processing delays inherent in the very payment method they directed. *See Lutz*, 22 Wn. App. at 432.

a.     **c. SPS's Post-Hoc Rejection of the Tender Was a Legal Nullity.**

Defendants cannot escape liability by pointing to their subsequent rejection of the tendered funds. The SAC alleges that SPS's own mortgage statement acknowledged the funds

9

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

were "Received Under Review" but ultimately "not accepted." (SAC ¶ 52; Ex. H). This has no legal effect. A creditor cannot wrongfully refuse a conforming tender and then invoke its own refusal as a bar to relief. *See Murray v. O'Brien*, 56 Wash. 361, 371-72, 105 P. 840 (1910). SPS's bad-faith rejection of funds it had directed Plaintiff to send—after Plaintiff performed precisely as instructed—was itself a wrongful act that cannot retroactively invalidate a perfected tender or restore the trustee's power of sale.

### b.       2. The Sale Is Independently Void Because the Trustee Breached Its Non-Delegable Duty of Good Faith.

A foreclosure trustee is not a mere agent for the lender. It is a neutral arbiter that owes a non-delegable duty of good faith to both the borrower and the beneficiary. RCW 61.24.010(4); *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). This duty requires the trustee to exercise independent judgment and take reasonable steps to protect the borrower's interests, including postponing a sale where appropriate. *Id.* A trustee's abdication of this neutral role by blindly deferring to the beneficiary's instructions is a foundational breach that can render the sale void. *Id.* at 791-92.

The SAC alleges that CRC, as a "captive affiliate" of the beneficiary's law firm, entirely abdicated this duty. (SAC ¶ 3). Despite receiving credible, real-time notice of a servicer-directed cure, CRC refused to investigate or postpone the sale. Instead, at 9:52 a.m., it unilaterally declared its intent to "proceed[] to sale." (SAC ¶ 38). This abdication of its duty in favor of the beneficiary's interest is a foundational defect that, if proven, can render the sale void. *See Klem*, 176 Wn.2d at 791-92; *Cox v. Helenius*, 103 Wn.2d 383, 389, 693 P.2d 683 (1985).

### C.       BECAUSE THE SALE IS PLAUSIBLY VOID, THE POST-SALE WAIVER DOCTRINE IS INEQUITABLE AND INAPPLICABLE

Defendants argue that Plaintiff's failure to enjoin the sale constitutes a waiver of all claims to unwind the sale, limiting her to monetary damages under RCW 61.24.127. (Defs.' Mot. to Dismiss at 8–9). This argument is legally premature and misapplies Washington law. It puts the cart before the horse by assuming the legal validity of the very sale Plaintiff challenges. The

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

Washington Supreme Court has made clear that post-sale finality statutes "presuppose[] a valid sale" and do not operate to ratify a transaction that was a legal nullity from its inception. *Schroeder*, 177 Wn.2d at 107, 297 P.3d 677; *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 568, 276 P.3d 1277 (2012). The waiver doctrine and the remedial limitations of RCW 61.24.127 apply to *voidable* sales, not to sales that are *void ab initio* for lack of authority.

Because the SAC pleads multiple, factually supported grounds for finding the sale void for lack of authority, including a perfected pre-auction cure that extinguished the default and the trustee's abdication of its duty of good faith, RCW 61.24.127's limitations on equitable remedies do not apply. If the trustee lacked the power of sale at 10:24 a.m., there was no valid sale to which finality could attach, Defendants' waiver argument fails as a matter of law at the pleading stage. If the trustee lacked the power of sale at the time of the sale, there was no valid sale to which finality could attach. Plaintiff's claims for declaratory relief and to quiet title therefore cannot be dismissed on this basis.

### 1.    The *Plein* Waiver Doctrine Is Inapplicable to Void Sales and Where Pre-Sale Restraint Was Impossible.

Washington courts apply a three-part test to determine if a borrower has waived the right to challenge a foreclosure sale: waiver occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale. *Plein v. Lackey*, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003). Critically, however, this doctrine is not an absolute bar. The Washington Supreme Court has repeatedly affirmed that waiver is an equitable doctrine that applies "only where it is equitable under the circumstances and where it serves the goals of the act." *Albice,* 174 Wn.2d at 570, 276 P.3d 1277.

If the trustee lacked the power of sale at 10:24 a.m., there was no valid sale to which finality could attach. Plaintiff's claims for declaratory relief and to quiet title therefore cannot be dismissed on this basis.

### 2.    Applying Waiver Would Be Inequitable Where a Presale Injunction

11

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

**Was Impossible.**

Before the remedy limitations of RCW 61.24.127 can even be considered, a court must first determine if the plaintiff has waived their claims under the equitable, three-part test established in *Plein v. Lackey*, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003). Waiver requires a showing that the party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure *prior to the sale*, and (3) failed to bring an action to enjoin the sale. *Id.* Critically, waiver is not an automatic bar; it applies "only where it is equitable under the circumstances and where it serves the goals of the act." *Albice,* 174 Wn.2d at 570.

Applying waiver here would be manifestly inequitable. The core defenses to this foreclosure, that SPS waived the cure deadline and that CRC breached its duty by refusing to postpone—arose from Defendants' own conduct on the morning of the sale. The SPS Ombudsman's directive to wire the funds, CRC's bad-faith 9:52 a.m. email declaring its intent to "proceed[] to sale," and Plaintiff's perfected 10:22 a.m. tender all occurred before the auction. (SAC ¶¶ 35, 38, 40). It was a legal and practical impossibility for Plaintiff to provide the five days' notice required to obtain a restraining order under RCW 61.24.130(2). The Washington Supreme Court has recognized that this notice requirement "may also have made a presale injunction impossible to acquire" where the dispositive facts arise at the last minute. *Klem*, 176 Wn.2d at 789 n.7. To hold that Plaintiff waived her claims by failing to achieve the impossible would subvert, not serve, the DTA's goal of providing an adequate opportunity to prevent wrongful foreclosure.

Defendants' reliance on cases like *Miller v. U.S. Bank, N.A.*, No. 78044-1-I, 2019 Wash. App. LEXIS 2757 (Wash. Ct. App. Oct. 28, 2019), is not only misplaced, it highlights precisely why waiver is inequitable here. The Miller court applied waiver because it was equitable to do so where the borrower had presale knowledge of his "void sale" defense for at least two years and simply failed to act. *Id.* at 15-16. Here, unlike in *Miller*, the defense arose moments before the sale, directly because of Defendants' obstructive conduct. This case presents the exact scenario

12

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

where applying waiver would subvert, not serve, the DTA's goal of providing an adequate opportunity to prevent wrongful foreclosure. Likewise, the recent decision in *VS Dev., LLC v. BRMK Priest Point, LLC*, No. 85435-6-I, 2024 Wash. App. LEXIS 1977 (Wash. Ct. App. Sept. 30, 2024), is inapposite. That case involved a commercial loan, and the court's waiver analysis rested on RCW 61.24.127(4), which expressly states that the statute's protections do not apply to commercial loans. Because this case involves a residential loan, the DTA's equitable considerations and borrower-favoring canons remain fully applicable.

At minimum, whether it is equitable to apply waiver is a fact-intensive inquiry that is inappropriate for resolution on a Rule 12(b)(6) motion. Because the sale is plausibly void and waiver is inequitable, Defendants' motion to dismiss Plaintiff's claims for equitable relief must be denied.

### D. PLAINTIFF HAS STATED A VALID CLAIM UNDER THE WASHINGTON CONSUMER PROTECTION ACT

Defendants' conduct not only divested the trustee of the authority to sell the Property, rendering the sale void, but that same course of conduct also constitutes a series of unfair and deceptive acts independently actionable under Washington's Consumer Protection Act, (CPA), ch. 19.86 RCW. Nonetheless, Defendants contend that because Plaintiff did not tender reinstatement funds by the statutory deadline under RCW 61.24.090(1), any subsequent conduct on their part is legally incapable of constituting an "unfair or deceptive act or practice." Dkt No. 50 at 5–6. This position is legally untenable. It conflates the expiration of a borrower's statutory right to compel reinstatement under the DTA with a mortgage servicer's independent and ongoing duty under the CPA to refrain from unfair and deceptive conduct.

The SAC plausibly alleges that SPS engaged in a pattern of unfair and deceptive acts that satisfy the five elements of a CPA claim: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to Plaintiff's business or property; and (5) causation. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013).

### 1. U.S. Bank Is Liable for the Unfair and Deceptive Acts of Its Agent,

13

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

SPS.

Under Washington's common law of agency, a principal is vicariously liable for the wrongful acts of its agent committed within the scope of the agency. *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). As the beneficiary of the Deed of Trust, U.S. Bank is the principal, and SPS, as the entity retained to service the loan, is its agent. The acts forming the basis of Plaintiff's CPA claim—including providing inaccurate quotes, obstructing reinstatement, and making deceptive cure instructions—were all committed by SPS in the directcourse of performing its duties as loan servicer. A beneficiary cannot insulate itself from liability by delegating its foreclosure-related functions to a third-party agent. U.S. Bank is therefore vicariously liable for SPS's violations of the CPA. Thus, when this response references the actions of SPS, it is necessarily also to include the actions of U.S. Bank.

**2.    SPS Engaged in a Pattern of Unfair and Deceptive Acts That Violate the CPA.**

The SAC pleads a clear pattern of conduct by SPS that was both unfair and deceptive, satisfying the first element of a CPA claim. This course of conduct was not merely negligent; it was an affirmative, multi-step scheme to obstruct Plaintiff's good-faith attempts to cure the default, culminating in a wrongful foreclosure. SAC pleads a clear pattern of conduct by SPS that was both unfair and deceptive. An act is "deceptive" if it has "the capacity to deceive a substantial portion of the public," and an act is "unfair" if it violates public policy, is immoral or unethical, or causes substantial consumer injury. *Klem*, 176 Wn.2d at 787. This pattern included at least two discrete violations.

**3.    SPS's Inaccurate Reinstatement Quote Was Deceptive.**

SPS committed a deceptive act when it provided Plaintiff a formal Reinstatement Quote that it knew or should have known was inaccurate. (SAC ¶¶ 26, 27). By omitting over $1,200 in recently assessed fees from a quote issued only four days before the sale, SPS created a hidden deficiency that made a timely, conforming cure nearly impossible. This act has the clear "capacity to deceive a substantial portion of the public" into believing they are tendering the full

RESPONSE TO DEFENDANTS                                    Devlin Law Firm
SELECT PORTFOLIO SERVICING, INC.                          526 Gilpin Avenue
AND U.S. BANK, N.A. AS TRUSTEE'S                      Wilmington, DE 19806
MOTION TO DISMISS                                        Tel: (302) 449-9010

amount required to reinstate a loan, only to be told their cure is deficient at the last minute. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785, 719 P.2d 531 (1986). This is a classic bait-and-switch tactic that is inherently deceptive.

### 4. SPS's Instructions to Cure Followed by Its Rejection of Payment Was an Unfair and Deceptive Practice.

SPS compounded its initial deception with a manifestly unfair and deceptive course of conduct on the morning of the sale. After Plaintiff's agent was escalated to the SPS Ombudsman—the servicer's highest authority for dispute resolution—the Ombudsman gave an explicit, unambiguous directive: wire the exact amount from the August 11th quote, and the cure would be effectuated. (SAC ¶ 35). This was a deceptive promise. After Plaintiff performed precisely as directed by initiating an irrevocable wire transfer, SPS refused to honor its own agent's commitment and rejected the funds. (SAC ¶¶ 40, 52).

This course of conduct—inducing performance based on an authoritative directive and then repudiating that promise to seize the financial benefit of a foreclosure—is a quintessential unfair practice under the CPA. It is oppressive, unethical, and caused Plaintiff substantial, unavoidable injury. *See Klem*, 176 Wn.2d at 787.

### 5. The Remaining CPA Elements Are Met.

The remaining elements of the CPA claim are plainly satisfied based on the detailed allegations in the SAC.

#### a. Trade or Commerce.

This element is not in genuine dispute. The acts occurred in "trade or commerce," as SPS is a professional, nationwide mortgage servicer and the Beneficiary, U.S. Bank, is a national banking association. (SAC ¶¶ 7–8). All alleged conduct—issuing the Reinstatement Quote, communicating with Plaintiff's agent about the default, directing and processing the wire transfer, and initiating the foreclosure, are commercial activities that fall squarely within the CPA's scope.

#### b. Public Interest Impact.

15

| | |
|---|---|
| RESPONSE TO DEFENDANTS | Devlin Law Firm |
| SELECT PORTFOLIO SERVICING, INC. | 526 Gilpin Avenue |
| AND U.S. BANK, N.A. AS TRUSTEE'S | Wilmington, DE 19806 |
| MOTION TO DISMISS | Tel: (302) 449-9010 |

The acts have a significant "public interest impact." Under RCW 19.86.093, a public interest impact is established if the defendant's acts have the "capacity to injure other persons." The SAC alleges that SPS is a large, institutional mortgage servicer that handles countless loans in Washington. (SAC ¶ 7). The alleged unfair and deceptive practices—issuing inaccurate quotes that create last-minute emergencies, directing borrowers into a departmental "run-around," and giving then repudiating authoritative cure instructions—are not unique to Plaintiff. They reflect systemic servicing failures with the clear capacity to harm other Washington homeowners facing foreclosure.

### c.     Injury to Business or Property & Causation.

Plaintiff suffered a clear injury to her property, which was directly and proximately caused by Defendants' conduct. The primary injury is the wrongful foreclosure of her home and the resulting loss of hundreds of thousands of dollars in home equity. (SAC ¶ 71). The Property, valued by SPS itself at $850,000, was sold for only $510,500 to satisfy a much smaller debt. (SAC ¶¶ 22, 51). This loss of equity is a direct, ascertainable financial injury. Additionally, under Washington law, the costs incurred investigating and attempting to resolve the servicer's errors, including the time and resources Plaintiff's agent spent during the day-of-sale "run-around," constitute a separate, compensable injury. *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009).

As for causation, the causal link is direct. But for SPS's unfair and deceptive acts—issuing a deficient quote, giving conflicting and obstructive instructions, and ultimately rejecting the very cure it had directed—the default would have been reinstated, the sale would not have occurred, and Plaintiff would not have lost her home and her equity.

Because the SAC pleads sufficient facts to satisfy all five elements of a CPA claim, the claim is plausibly pled and dismissal is improper.

### E.     PLAINTIFF HAS STATED A VALID CLAIM FOR VIOLATIONS OF RESPA

Defendants argue that SPS is shielded by RESPA's "safe harbor" for notices of error

16

received within seven days of a sale. Dkt. No. 50 at 9–11. This is not a case of an unsolicited, last-minute demand. This is a case where the servicer itself, through its Ombudsman, directed Plaintiff to perform a specific action and then violated RESPA by failing to have any reasonable procedure in place to manage the consequences of its own instruction.

**F.      SPS Cannot Invoke RESPA's Safe Harbor to Shield Itself from Errors It Induced and Directed**

The purpose of the safe harbor in 12 C.F.R. § 1024.35(f)(2) is to protect servicers from being ambushed, not to provide a license for a servicer to induce a borrower's action and then use the provision as a shield to ignore the direct consequences. When the SPS Ombudsman instructed Plaintiff to wire the funds, SPS created an independent obligation under RESPA to properly service that transaction. The "error" was not simply that a sale was proceeding; the error was SPS's own internal failure to communicate and coordinate—a failure of its own policies and procedures to stop one department (foreclosure) from contradicting another (the Ombudsman). Such a failure to maintain reasonable policies violates 12 C.F.R. § 1024.38, and Defendants are estopped from using a safe harbor to protect them from the consequences of their own express directives.

**1.      SPS's Refusal to Accept the Directed Cure Constitutes a Servicing Error Under Regulation X**

Defendants' narrow interpretation that servicing is limited to "scheduled periodic payments" is contrary to the plain text of Regulation X. The management of loan payments and application of funds to a borrower's account is the very definition of "servicing." *See* 12 U.S.C. § 2605(i)(3); 12 C.F.R. § 1024.2(b). Plaintiff has alleged multiple covered errors under 12 C.F.R. § 1024.35(b), including a "[f]ailure to accept a payment that conforms to the servicer's written requirements for the payment." 12 C.F.R. § 1024.35(b)(1). This claim is distinct from disputes over a loan's original terms, as in *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012). The errors asserted here fall under the general category of "any other error relating to the servicing of a borrower's mortgage loan," 12 C.F.R. § 1024.35(b)(11), a category not subject to

| | |
|---|---|
| RESPONSE TO DEFENDANTS | Devlin Law Firm |
| SELECT PORTFOLIO SERVICING, INC. | 526 Gilpin Avenue |
| AND U.S. BANK, N.A. AS TRUSTEE'S | Wilmington, DE 19806 |
| MOTION TO DISMISS | Tel: (302) 449-9010 |

the seven-day exception.

Second, even if the pre-sale communications were subject to the exception, the SAC alleges a separate, post-sale notice of error. At 10:29 a.m., five minutes *after* the sale, Plaintiff's agent emailed the SPS Ombudsman confirming the pre-sale wire. (SAC ¶¶ 42-43). SPS acknowledged receipt. (Ex. F). SPS's subsequent refusal to accept the funds and correct its accounting, as documented in its own mortgage statement (Ex. H), constituted a new servicing error and a failure to correct upon receiving a post-sale notice of error. This post-sale conduct falls entirely outside the pre-sale seven-day exception, triggering a renewed duty to investigate and respond under § 1024.35(e). Whether these communications constituted a valid notice of error and whether SPS's response was adequate are questions of fact that preclude dismissal.

**2. Plaintiff Has Pleaded Both Actual Damages and a Pattern or Practice of Noncompliance**

Plaintiff's allegations clearly satisfy the remaining elements of a RESPA claim under 12 U.S.C. § 2605(f). But for SPS's RESPA violations, the reinstatement would have been completed, and Plaintiff would not have suffered actual damages, including the loss of her home and at least $339,500 in equity. Dkt. No. 43 ¶ 105. Furthermore, SPS's serial failures on August 15th, first, by failing to halt the sale pre-foreclosure, and second, by refusing to accept the funds post-foreclosure to facilitate a rescission, demonstrate a systemic breakdown constituting a "pattern or practice" of noncompliance sufficient for statutory damages. Dkt. No. 43 ¶ 106.

**G. THE FDCPA CLAIM AGAINST CRC IS PLAUSIBLY PLED, AND THE MOVING DEFENDANTS LACK STANDING TO DISMISS IT.**

The motion brought by SPS and U.S. Bank to dismiss the Fourth Cause of Action under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(6)(A), fails for two independent and dispositive reasons. First, as a threshold matter, the moving defendants lack standing to seek dismissal of a claim asserted exclusively against their co-defendant, CRC. Second, even if the Court were to consider the argument on its merits, it fails because it is predicated on a disputed legal and factual premise, that the trustee possessed a "present right to

18

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

possession" at the moment of the auction.

**1.    Moving Defendants Lack Standing to Dismiss the FDCPA Claim.**

The motion to dismiss the FDCPA claim is procedurally improper and should be denied on that basis alone. The SAC is clear that the Fourth Cause of Action for violation of 15 U.S.C. § 1692f(6) is asserted *only* against Defendant CRC, the foreclosure trustee. (SAC ¶¶ 108–114). The moving parties, SPS and U.S. Bank, are not named in this claim.

It is axiomatic that a party lacks standing to move to dismiss a claim asserted exclusively against a co-defendant. *See, e.g., In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1097 (S.D. Cal. 2017) (denying a motion to dismiss where the moving defendant lacked standing because the challenged allegations were not directed at it). Because SPS and U.S. Bank are not the real parties in interest for this claim and suffer no cognizable injury if the claim proceeds against CRC, they have no standing to seek its dismissal under Federal Rule of Civil Procedure 12(b)(6).

**2.    In the Alternative, the FDCPA Claim Is Plausibly Pled.**

Even if the Court were to consider the argument, the motion fails on its merits. The motion contends that CRC had a "present right to possession" because the statutory cure deadline of August 4, 2025, had passed. (Defs.' Mot. at 11). This argument impermissibly resolves the central disputed questions of law and fact in this case in Defendants' favor.

The viability of an FDCPA claim under 15 U.S.C. § 1692f(6)(A) hinges on whether the party conducting the nonjudicial foreclosure had a "present right to possession of the property." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 79, 87 (2019). The Supreme Court has made clear that whether such a right exists is a question of state law. *Id.*

As established extensively in this opposition, the SAC plausibly alleges that CRC *lacked* a present right to possession at the moment of the sale under Washington law. The legal and factual progression is straightforward:

- The 11-day cure deadline in RCW 61.24.090(1) is a waivable procedural right, not a non-

19

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010

waivable jurisdictional bar. *See Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 107 & n.7, 297 P.3d 677.

- The SAC alleges that SPS, acting as the beneficiary's agent, provided an explicit, day-of-sale instruction to cure the default, thereby waiving the statutory deadline. (SAC ¶ 35).

- In reliance on that instruction, Plaintiff perfected a consensual, common-law tender via an irrevocable wire transfer at 10:22 a.m., two minutes before the auction was conducted. (SAC ¶ 40).

- Under Washington law, a perfected cure of a default extinguishes the trustee's power of sale. *See Albice*, 174 Wn.2d at 568, 276 P.3d 1277.

- Therefore, at 10:24 a.m., when CRC conducted the auction, it plausibly lacked the, "present right to possession" required by § 1692f(6)(A).

Defendants' argument that the right to sell was absolute because the August 4th deadline had passed simply begs the question. It assumes its conclusion by disregarding the well-pleaded facts establishing waiver and estoppel. Because the existence of a "present right" under state law is a quintessential disputed question of law and fact, the FDCPA claim is plausibly pled and cannot be resolved on a motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss must be denied. The motion is premised on a fundamental legal error: it improperly applies post-sale finality and waiver doctrines to a sale that, as plausibly alleged in the Second Amended Complaint (SAC), was void ab initio for lack of trustee authority.

As demonstrated, the SAC pleads multiple, independent grounds for finding the sale void, including a servicer-directed waiver and cure that extinguished the power of sale, and the trustee's fundamental breach of its non-delegable duty of good faith. When a sale is void, defenses premised on post-sale finality, including waiver under RCW 61.24.127, are legally irrelevant. At minimum, Defendants' motion can only be granted by improperly resolving

20

| | |
|---|---|
| RESPONSE TO DEFENDANTS | Devlin Law Firm |
| SELECT PORTFOLIO SERVICING, INC. | 526 Gilpin Avenue |
| AND U.S. BANK, N.A. AS TRUSTEE'S | Wilmington, DE 19806 |
| MOTION TO DISMISS | Tel: (302) 449-9010 |

numerous factual disputes against Plaintiff—including whether waiver and estoppel apply, whether the trustee acted in good faith, and whether a consensual cure was perfected before the sale. Such fact-finding is inappropriate at the pleading stage.

Plaintiff respectfully requests that the Court deny the motion in its entirety.

In the alternative, should the Court conclude that any aspect of Plaintiff's claims requires greater specificity, Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2). No new claims would be added, and any amendments would be narrowly tailored to clarify the existing factual and legal theories based on the documents already incorporated into the SAC.

Dated November 12, 2025.

DEVLIN LAW FIRM LLC

I CERTIFY THAT THIS MEMORANDUM CONTAINS 7,090 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES." COUNSEL MAY RELY ON THE WORD COUNT OF A WORD-PROCESSING SYSTEM USED TO PREPARE THE BRIEF.

By: */s/ Christina Henry*

Christina Henry
Attorney for Plaintiffs
6100 219th St SW
Ste 480, PMB 398
Mountlake Terrace, WA 98043-2222
Tel# 206-319-0077
*chenry@devlinlawfirm.com*
*Attorneys for Plaintiff*
*Hat Nguyen*

21

RESPONSE TO DEFENDANTS
SELECT PORTFOLIO SERVICING, INC.
AND U.S. BANK, N.A. AS TRUSTEE'S
MOTION TO DISMISS

Devlin Law Firm
526 Gilpin Avenue
Wilmington, DE 19806
Tel: (302) 449-9010