UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HAT NGUYEN,

                    Plaintiff(s),

        v.

CLEAR RECON CORP., et al.,

                    Defendant(s).

CASE NO. C25-1823-KKE

ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendants' motion to dismiss the second amended complaint. The motion is ripe for consideration. Dkt. No. 50, 55, 60. For the reasons below, the Court will grant Defendants' motion.

## I.    BACKGROUND

This case stems from Plaintiff Hat Nguyen's default on a mortgage loan ("Loan") in June 2023, and the foreclosure sale that followed on August 15, 2025. Dkt. No. 43 ¶¶ 28–30, *id.* at 55. The Loan was secured by a deed of trust ("DOT") and encumbered Nguyen's home, real property in Kent, Washington ("Property"). *Id.* ¶ 17. At the time of Nguyen's default, Defendant U.S. Bank owned the Loan, Defendant Select Portfolio Servicing, Inc. ("SPS") serviced the Loan, and Defendant Clear Recon Corp. ("CRC") served as the DOT trustee. *Id.* ¶ 2.

On April 4, 2025, CRC recorded a notice of trustee's sale ("NOTS"). Dkt. No. 51-2 at 2. The NOTS explained that a trustee foreclosure sale would take place on August 15, 2025, and

ORDER ON MOTION TO DISMISS - 1

"[t]he defaults … must be cured by 8/4/2025 (11 days before the sale date) to cause a discontinuance of the sale." *Id.* at 4.  The NOTS also stated this is "THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME" and advised Nguyen to contact an attorney or housing counselor "to assess [her] situation and refer [her] to mediation" if eligible. *Id.* at 5.

In the months leading up to the August 2025 foreclosure sale, Nguyen's daughter and agent Julie Tran communicated with SPS and CRC representatives by email and by phone.  In June 2025, Tran applied for a loan modification "online", which Nguyen alleges SPS denied.  Dkt. No. 43 ¶¶ 21–22.  On July 23, 2025, Nguyen alleges that Tran emailed an SPS Relationship Manager "to discuss options," but never received a response. *Id.* ¶ 23.  Instead, Tran was directed to contact SPS's foreclosure counsel, Aldridge Pite, LLP, and Tran left a voicemail which was never returned. *Id.* ¶ 25.  Nguyen further alleges that on August 11, 2025, SPS sent a letter stating

> You may cure the delinquency by paying the Total Reinstatement Amount, which has been calculated for you in the table below.  The Total Reinstatement Amount expires at 5:00pm Eastern Time on the Reinstatement Good to Date.  After that date you must contact us for a new Reinstatement Quote … Figures quoted above are subject to final verification by the Note Holder.  SPS reserves the right to either reject or apply funds received after the expiration of this Reinstatement quote[.]

*Id.* at 36–37.  The statement provided a "Reinstatement Good to Date" of August 14, 2025, and "established that the amount of $73,021.54 was required to cure the default." *Id.* at 36.  The letter further stated: "**SPS reserves the right to either reject or apply funds received after the expiration of this Reinstatement Quote, and, if insufficient to fully reinstate, SPS may elect to apply the funds to your account.**" *Id.* at 37.  Nguyen does not allege further attempts to communicate with SPS—or any attempt to cure the default—until "the morning of the sale," August 15, 2025. *Id.* ¶ 26.

That morning, Tran made multiple phone calls and sent multiple emails to representatives at both SPS and CRC.  Nguyen alleges that, at the direction of a CRC representative, at 9:07 a.m.,

ORDER ON MOTION TO DISMISS - 2

Tran emailed a screenshot of Nguyen's bank account, which contained funds sufficient to cure the default on the Loan, as well as a request to stop the auction, which was scheduled to begin at 10:00 a.m. *Id.* ¶ 29–30.  Three minutes after Tran sent that email, a CRC representative replied: "Please reach out directly to SPS at Loss Mitigation hotline[.]" *Id.* ¶ 33.  Tran called the hotline, where she was placed on hold, transferred between departments, and was told that SPS "could not do anything to stop the sale." *Id.* ¶ 34.  In a second call with SPS, an SPS ombudsman instructed Tran to wire the amount to cure the default, take a picture of the wire confirmation, and email the proof of the wire transfer to "ombudsman@spservicing.com." *Id.* ¶ 35.  In successive emails to CRC at 9:46 a.m. and 9:50 a.m., Tran both sought advice from CRC and told the CRC representative that "SPS states only you can stop the sale." *Id.* ¶¶ 36–37.  At 9:52 a.m., CRC emailed Tran: "Your request has been reviewed and we will be proceeding to sale." *Id.* ¶ 38.  At 10:22 a.m., Nguyen sent a wire transfer to SPS for the amount listed in the expired Reinstatement Quote from the August 11, 2025 letter. *Id.* ¶ 40.  The sale began at 10:24 a.m. *Id.* ¶ 41.  "At 10:29:51 a.m. on August 15, 2025," Tran received an automated email from SPS confirming receipt of her wire transfer. *Id.* ¶ 43.  Though the second amended complaint does not state the precise time at which the Property was sold at auction, Nguyen alleges that at 1:35 p.m. on the day of the sale, "SPS notified CRC of [the tendered] funds and that they were being returned." *Id.* ¶ 59.  Defendant Jaspal Singh bought the Property, which was financed by Defendant Eastside Funding, LLC ("Eastside Funding"). *Id.* ¶¶ 9, 80.  Nguyen alleges that six days after the sale, SPS mailed her a cashier's check for the full amount she had wired, $73,021.54, with "Return of Funds" noted on the check. *Id.* ¶ 53.

On September 11, 2025, Nguyen sued CRC, SPS, U.S. Bank, Singh, and Eastside Funding in King County Superior Court.  Dkt. No. 1-1.  On September 19, 2025, Defendants removed the

ORDER ON MOTION TO DISMISS - 3

case to federal court.  Dkt. No. 1.  Both Singh and Eastside Funding ("Purchaser Defendants") are named "because they are the purported grantees" of the foreclosure sale.  Dkt. No. 43 ¶ 80.

On September 24, 2025, Nguyen filed a motion for a temporary restraining order ("TRO") asking the Court to enjoin the Purchaser Defendants from either seeking to evict Nguyen from the Property, including by initiating an unlawful detainer action, or by selling, transferring, conveying, or otherwise encumbering the Property.  Dkt. No. 13.  On October 6, 2025, the Court denied the motion, finding that Nguyen was unlikely to prevail on the merits of her claims and that Washington's Deed of Trust Act ("DTA") precluded post-sale injunctive relief.  Dkt. No. 45.

On October 1, 2025, Nguyen filed her second amended complaint.  Dkt. No. 43.  Nguyen asserts the following claims: (1) violations of Washington's Consumer Protection Act ("CPA") by SPS and CRC; (2) declaratory relief under Washington's Declaratory Judgment Act and quiet title statute to set aside the sale and quiet title to the Property against all Defendants; (3) violations of the Real Estate Settlement Procedures Act ("RESPA") and its implementing regulations by SPS; and (4) violation of the Fair Debt Collection Practices Act ("FDCPA") by CRC.  *Id.*

## II.   ANALYSIS

### A.   Legal Standard

In evaluating a motion to dismiss under Rule 12(b)(6), a court examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In deciding a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of

ORDER ON MOTION TO DISMISS - 4

judicial notice—without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).[1]

## B.    The Court Declines to Strike CRC's Notice of Joinder.

The Court first considers Nguyen's surreply, which asks the Court to strike CRC's notice of joinder in SPS and U.S. Bank N.A.'s motion to dismiss. *See* Dkt. Nos. 58, 64. Nguyen objects that the notice was filed after she filed her opposition, but cites no authority directly on point in support of her request. And the Local Rules of this district do not appear to set a deadline for filing a notice of joinder. While Nguyen argues the late-filed joinder prejudiced her ability to fully oppose Defendants' motion, the Court observes that the arguments lodged in the motion to dismiss expressly pertain to CRC, and Nguyen had a full opportunity to address them in her opposition. Moreover, in her motion to strike, Nguyen neither identified issues pertaining to CRC that she was unable to address, nor requested an opportunity to submit additional briefing. The Court agrees with Nguyen that it is a better practice to file a notice of joinder before the motion has been opposed. But given that Nguyen had notice of the argument made as to CRC, the Court will nonetheless exercise its discretion to permit the filing and deny Nguyen's motion to strike. Dkt. No. 64.

## C.    Nguyen Fails to State a RESPA Claim Against SPS.

Nguyen alleges that SPS violated its duties under the Real Estate Settlement Procedures Act ("RESPA") and RESPA's implementing regulations ("Regulation X") "by failing to maintain reasonable policies to identify and communicate with a successor in interest" and "by failing to properly respond to a notice of error that was confirmed and validated by its own Ombudsman department." Dkt. No. 43 ¶¶ 89–107 (citing 12 U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1024.35).

---

[1] As Nguyen does not oppose Defendants' request for judicial notice, the Court judicially notices the publicly recorded documents Defendants attach to their motion to dismiss.

ORDER ON MOTION TO DISMISS - 5

RESPA imposes a duty on loan servicers to respond to borrower inquiries.  12 U.S.C. § 2605(e).  Namely, "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response within 5 days[.]"  *Id.* § 2605(e)(1)(A).  A "qualified written request shall be a written correspondence" which "includes a statement of the reasons for the belief of the borrower … that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  *Id.* § 2605(e)(1)(B).  RESPA prohibits servicers of mortgage loans from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure."  *Id.* § 2605(k)(1)(C).  Regulation X, in turn, establishes error resolution procedures which require a servicer to "respond to a notice of error" either by "[c]orrecting the error" or "[c]onducting a reasonable investigation" into the error.  12 C.F.R. § 1024.35(e).  A "qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error[.]"  *Id.* § 1024.35(a).  As part of those error resolution procedures, Regulation X allows servicers to "establish an address that a borrower *must* use to submit a notice of error in accordance with the [error resolution] procedures[.]"  *Id.* § 1024.35(c) (emphasis added).

Nguyen alleges that Tran's email and oral communications with SPS on the morning of the foreclosure sale "constituted a 'notice of error' under 12 C.F.R. § 1024.35," triggering the regulation's error resolution procedures.  Dkt. No. 43 ¶ 92.  In Nguyen's view, having received Tran's communications, SPS's subsequent "failure to halt [the] sale" thus violated RESPA and Regulation X.  *Id.* ¶¶ 93, 98; Dkt. No. 55 at 18–19.

ORDER ON MOTION TO DISMISS - 6

Given RESPA's and Regulation X's clear requirements that notices of error be written and sent to an address established by the servicer, Nguyen's RESPA claim fails.[2]  Nguyen attached as an exhibit to her complaint a statement from SPS dated August 15, 2025.  Dkt. No. 43 at 55–57.  That statement provides:

> **NOTICE OF ERROR OR INFORMATION REQUEST OR QUALIFIED WRITTEN REQUEST**[:] If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request.  All Notices of Error or Information Requests must be sent to the address listed above in the important mailing addresses section, as this is our exclusive address under Federal Law for these matters.  If you send your correspondence to any other address, it may not be processed in accordance with Federal Law.

Dkt. No. 43 at 56.  The address SPS provided for notices of error was:

> Select Portfolio Servicing, Inc.
> P.O. Box 65277
> Salt Lake City, UT 84165
> Fax: (801) 270-7856

Crucially, Nguyen does not allege that Tran either mailed or faxed a notice of error to the pertinent address or fax number.  Instead, according to the second amended complaint, Tran attempted to communicate with SPS exclusively by phone and email.  Dkt. No. 43 ¶¶ 23–26 (describing Tran's emails and phone calls made prior to the foreclosure sale date), ¶¶ 34–36

---

[2] Regulation X enumerates eleven types of "covered errors," including two foreclosure-related error types.  *See* 12 C.F.R. § 1024.35(b)(1)–(11).  Under Regulation X, servicers are "not required to comply with" the error resolution procedures for the two foreclosure-related error types where they receive the notice "seven or fewer days before a foreclosure sale."  12 C.F.R. § 1024.35(f)(2).  In their motion to dismiss, Defendants argued that because Nguyen's alleged notices of error pertained to a foreclosure, SPS had no obligation to respond to Tran's morning-of-the-sale emails and phone calls under RESPA or its implementing regulations.  In response, Nguyen appears to concede that the foreclosure safe harbor applies, but nonetheless argues that SPS's errors on the day of the foreclosure sale could be considered as covered errors under 12 C.F.R. §§ 1024.35(b)(1) or (b)(11).  Dkt. No. 55 at 18.  These covered errors include a servicer's "[f]ailure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments," as well as a catch-all covered error, "[a]ny other error relating to the servicing of a borrower's mortgage loan[.]"  *Id.* (citing 12 C.F.R. §§ 1024.35(b)(1), (11)).  The Court disagrees.  On these facts, construing 12 C.F.R. §§ 1024.35(b)(1) or (b)(11) as Nguyen requests would obviate the foreclosure safe harbor altogether.  Moreover, as explained above, and fatal to her claim, Nguyen never submitted a qualified written request to trigger RESPA in the first place.

ORDER ON MOTION TO DISMISS - 7

(describing Tran's emails and phone calls made on the date of the foreclosure sale). As the Ninth Circuit has explained, RESPA's "statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). "If a servicer establishes a RESPA address and notifies a borrower of it, a borrower has a [qualified written request] claim only if she sent the [qualified written request] to that address." *Choudhuri v. Specialised Loan Servicing*, 3:19-CV-04198-JD, 2022 WL 1188865, at *2 (N.D. Cal. Apr. 20, 2022) (holding borrower's failure to send her written request to the designated address was "fatal to her [RESPA] claim"). A borrower's "email, by virtue of being a digital communication, was necessarily *not* sent to [the loan servicer's] designated mailing address." *Loewy v. CMG Mortgage, Inc.*, 385 F. Supp. 3d 1083, 1087 n. 1 (S.D. Cal. 2019) (emphasis in original). Here, neither Tran nor Nguyen ever made a qualified written request, and Nguyen does not allege that she sent any written communications to the designated address or fax number. Thus, Tran's communications—emails and phone calls—never triggered the statutory and regulatory procedures that form the basis of Nguyen's RESPA claim.

In sum, Nguyen's RESPA claim fails, and her third cause of action is dismissed. Dkt. No. 43 ¶¶ 89–107.

**D.    Nguyen's CPA Claim Against CRC and SPS Fails.**

Nguyen alleges that "CRC and SPS committed unfair acts by engaging in a coordinated, bad-faith obstruction of [her] right to reinstate her loan." Dkt. No. 43 ¶ 65. Nguyen points to CRC's request that Tran submit proof of funds on the morning of the sale and SPS's Reinstatement Quote as unfair practices. *Id.* As detailed below, because Nguyen had no "right" to reinstate her loan when she endeavored to do so, her CPA claim fails.

Washington's Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

ORDER ON MOTION TO DISMISS - 8

WASH. REV. CODE § 19.86.020.  A CPA claim has five elements: "(1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation." *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153 (Wash. 2017) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986)).  If one element fails, the CPA claim as a whole fails.  *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 635 (Wash. Ct. App. 1997) ("All elements must be present; a finding that any element is missing is fatal to [a CPA] claim.").  "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest."  *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

As noted above, the Court previously denied Nguyen's motion for a TRO, finding that Nguyen did not show likelihood of success on the merits of her claims because her wire transfer to SPS took place both after the deadline to cure contemplated by the DTA, as well as the deadline prescribed by the August 11, 2025 Reinstatement Quote.  *See* Dkt. No. 45 at 7–11.  In her opposition to Defendants' motion to dismiss, Nguyen raises the same waiver arguments that the Court previously rejected in the context of her motion for a TRO.  *See* Dkt. No. 55 at 8–10.  In its prior order, the Court explained that under the DTA, a borrower may discontinue a trustee's foreclosure sale through cure "[a]t any time prior to the eleventh day before the date set by the trustee for the sale[.]"  Dkt. No. 45 at 7–11 (quoting WASH. REV. CODE § 61.24.090 (DTA section titled, in part, "Curing defaults before sale")).   Here, the April 4, 2025 NOTS recorded the trustee sale date as August 15, 2025.  Dkt. No. 51-2 at 2–5.  Thus, under the DTA, Nguyen's statutory deadline to cure the default was August 4, 2025.  This deadline was expressly provided to Nguyen in the NOTS, and Nguyen does not allege that she tendered a cure of the default by this date.  *Id.* And even assuming the Reinstatement Quote extended the time in which Nguyen could attempt to

ORDER ON MOTION TO DISMISS - 9

cure the default,[3] the quote set a cure deadline of August 14, 2025 at 5 p.m. Eastern Time. Nguyen does not allege that she tendered funds by that deadline. *Id.* at 10.

Nguyen was undoubtedly frustrated by the conflicting information provided by CRC and SPS representatives on the morning of the sale, and the false hope created by the SPS ombudsman directing her to wire funds. The Court is sympathetic to Nguyen's predicament, but the fact remains that Nguyen did not exercise her statutory right to cure by the August 4, 2025 deadline, or timely seek to invoke the option to cure provided in the Reinstatement Quote before it expired. Nor did Nguyen seek an injunction until over a month *after* the sale. Dkt. No. 13. Accordingly, for the same reasons set forth in the Court's prior order on Nguyen's motion for a TRO, the Court concludes that Nguyen had no right to stop the sale on August 15, 2025, and as such, none of Defendants' alleged actions on the morning of the sale violated the DTA or caused Nguyen's injuries asserted here. *See* Dkt. No. 45 at 10 ("Nguyen's waiver argument asks the Court to either construe Defendants' communications as enlarging the termination right afforded to her by the DTA, or not give effect to the time limits set by the DTA, which it cannot do."). "[B]ecause no Deed of Trust Act claim can survive, no CPA claim based on a Deed of Trust Act violation may survive either." *Batson v. Deutsche Bank Tr. Americas*, 2:15-CV-00193-SAB, 2017 WL 3754827, at \*3 (E.D. Wash. Aug. 30, 2017). Thus, Nguyen's CPA claim—which is predicated on her untimely offer to cure and the resulting sale of the Property—fails.

**E.   Nguyen's Declaratory Judgment and Quiet Title Claim Fails.**

Nguyen seeks declaratory relief to set aside and deem void the foreclosure sale under Washington's Declaratory Judgment Act and Quiet Title statute. Dkt. No. 43 ¶¶ 78–88. This cause of action is predicated upon the same waiver argument the Court has already rejected. *See*

---

[3] As noted in the Court's prior order on the motion for TRO, the Reinstatement Quote made clear that SPS reserved the right to refuse funds tendered after the August 14, 2025 deadline. Dkt. No. 43 at 36–37.

ORDER ON MOTION TO DISMISS - 10

*supra* at Part II.D.; Dkt. No. 45 at 7–11.  As the Court has explained, while the DTA allows borrowers to enjoin a foreclosure sale, that relief is unavailable once the sale has taken place.  *See* WASH. REV. CODE § 61.24.130(b)(2) ("No court may grant a restraining order or injunction to restrain a trustee's sale unless the person seeking the restraint gives five days notice to the trustee of the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made."); *see also* Dkt. No. 45 at 7.  Here, as noted above, Nguyen sought to enjoin the sale as invalid over a month after the sale had taken place.  Thus, the DTA forecloses her claim for declaratory judgment.

Washington's quiet title statute "requires that a person seeking to quiet title establish a valid subsisting interest in property and a right to possession thereof." *Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 130 P.3d 880, 884 (Wash. Ct. App. 2006) (citing WASH. REV. CODE § 7.28.010).  "A 'plaintiff in an action to quiet title must prevail, if he prevails at all, on the strength of his own title, and not on the weakness of the title of his adversary.'" *Wash. State Grange v. Brandt*, 148 P.3d 1069, 1077 (Wash. Ct. App. 2006) (quoting *City of Centralia v. Miller*, 197 P.2d 244, 247 (Wash. 1948)).  Thus, to "maintain a quiet title action against a mortgagee, a plaintiff must first pay the outstanding debt on which the subject mortgage is based." *Kwai Ling Chan v. Chase Home Loans Inc.*, C12-0273-JLR, 2012 WL 1252649, at *9 (W.D. Wash. Apr. 13, 2012); *see also Evans v. BAC Home Loans Servicing, LP*, No. C10-0656-RSM, 2010 WL 5138394, at *3 (W.D. Wash. Dec. 10, 2010) ("Plaintiffs cannot assert an action to quiet title against a purported lender without demonstrating they have satisfied their obligations under the Deed of Trust.").

Here, because the Court has already rejected Nguyen's assertion that her post-deadline tender cured her default, Nguyen cannot assert that she has satisfied her obligations under the DOT.  Thus, Nguyen's quiet title claim fails as a matter of law.

**F.      Nguyen's FDCPA Claim Against CRC Fails.**

Nguyen asserts that CRC violated the Fair Debt Collection Practices Act ("FDCPA") by proceeding with the foreclosure sale, thus "taking nonjudicial action to effect the dispossession of property when there was no present right to do so."  Dkt. No. 43 ¶¶ 111–114.

The FDCPA in relevant part prohibits a debt collector such as CRC from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if [] there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]"  15 U.S.C. § 1692f(6)(A).  As Defendants note, because Nguyen did not cure the default by August 4, 2025, SPS was entitled to proceed with the sale under Washington's DTA.  Nguyen's FDCPA claim thus fails for the same reasons as her other claims: the sale was lawful.

**G.      The Court Will Not Grant Leave to Amend.**

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts."  *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  Here, permitting Nguyen to amend her complaint a third time would be futile.  *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile.").  Nguyen's CPA claim fails because there was no underlying DTA violation.  Her RESPA claim fails because the communications she alleges give rise to that claim do not trigger the statutory protections on which the claim is predicated.  Nguyen's claims for declaratory relief and quiet title fail because she did not timely seek to enjoin the trustee's sale, and she cannot show that she timely fulfilled her obligations as a borrower under the DOT.  And Nguyen's FDCPA claim fails because CRC was entitled to conduct the foreclosure sale when she did not cure her default by August 4, 2025.  Since there are no facts that Nguyen

ORDER ON MOTION TO DISMISS - 12

could plead consistent with her prior pleadings to cure these shortcomings, the Court will dismiss this action with prejudice.

### III.  CONCLUSION

For the reasons above, the Court GRANTS Defendants' motion to dismiss.  Dkt. No. 50. The Clerk is directed to close this case.

Dated this 30th day of June, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON MOTION TO DISMISS - 13